THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWIN L. JOHNSON, Respondent, *v.* NEW YORK PRODUCE EXCHANGE, Appellant.

1. CORPORATIONS — PROTECTION OF RIGHTS OF MEMBERS — VISITATORIAL POWERS OF THE COURTS. The visitatorial supervision inherent ·in the courts (when not regulated by statute) over the affairs of public or private corporations, extends to the investigation of their proceedings for the purpose of keeping them within their chartered powers and protecting the rights of members against usurpation of the governing body to their prejudice.

2. PRIVATE CORPORATIONS — NEW YORK PRODUCE EXCHANGE — DISFRANCHISEMENT OF MEMBER — SCOPE OF REVIEW BY COURT, ON APPLICATION FOR MANDAMUS. When a member of a private corporation, such as the New York Produce Exchange, has been suspended or expelled by its board of managers, after a trial by the board on notice and with a full opportunity to be heard, the court, in determining an application for a mandamus to compel restoration to membership, is, in the absence of fraud or collusion, restricted to the question of jurisdiction of the board of managers to suspend or expel the member, under the charter of the exchange and its by-laws legally enacted; but, *it seems*, that a total absence of evidence to support the sentence of suspension or expulsion should have the same force in such a mandamus proceeding as an absence of jurisdiction to make any inquiry at all.

3. DISFRANCHISEMENT OF MEMBER — REQUISITES OF BY-LAW. To justify the action of the board of managers of such a corporation as the New York Produce Exchange in suspending or expelling a member, by proceedings under its by-laws, the by-law in question must have been authorized by its charter, and, in addition, must state the causes of suspension and expulsion with such reasonable degree of certainty that a member may know the transgressions which will subject him to the penalty.

51

4. By-law Providing for Disfranchisement of Member — Moral Delinquency in Relation to a Contract. Under the by-law of the New York Produce Exchange which empowers the board of managers, upon investigation and hearing, to suspend or expel a member, upon a charge of "willful violation of the charter or by-laws, or of fraudulent breach of contract, or of any proceedings inconsistent with just and equitable principles of trade, or of other misconduct," a mere breach or non-performance of a contract, unaccompanied by any moral delinquency, is not a cause of suspension or expulsion; but the by-law extends to conduct in respect to a contract, either in its inception or execution, or the failure to execute it, which is inconsistent with just and fair dealing, although it may fall short of actionable fraud, and although it is not of that specific and definite character of which the law, in an action between the parties, will take notice.

5. Contract Enforceable at Law. The fact that a contract is enforceable at law does not withdraw it from the jurisdiction of the board of managers of the Produce Exchange under the above by-law.

6. Sufficiency and Legality of By-law. The above by-law is sufficiently definite and specific, and was authorized by the charter of the exchange, which specifies, among the purposes of the corporation, the inculcation of "just and equitable principles of trade," and empowered it to "make all proper and lawful by-laws," and to "expel any member in such manner as may be provided by the by-laws."

7. Sufficiency of Complaint against Member, to Give Jurisdiction. A complaint against a member of the New York Produce Exchange, accusing him "of proceedings inconsistent with just and equitable principles of trade, as follows: Non-fulfillment of contract of November 16th, 1892," does not make a simple breach of contract the gravamen of the offense, but is sufficient to fairly inform the member that he is charged with proceedings inconsistent with just and equitable principles of trade in relation to the contract specified, and, hence, is sufficient to give jurisdiction to the board of managers under the by-law to make the inquiry provided for therein.

8. Mandamus — Evidence to Support Disfranchisement of Member. In reviewing the evidence, on an application for a mandamus to restore the relator to membership in the New York Produce Exchange after suspension therefrom as a result of a trial by the board of managers under the by-laws, to ascertain whether there was any evidence tending to show acts on the part of the relator "inconsistent with just and equitable principles of trade," as distinguished from a mere breach of contract, as a question of jurisdiction essential to the maintenance of the decision of the board of managers, the question for the court is not whether, passing upon the evidence as *res nova*, it would have reached the same conclusion as that of the board of managers, or whether the conclusion was reasonable or unreasonable, but simply and wholly whether the case was so bare of evidence to sustain the decision that no

honest mind could reach the conclusion that the relator's conduct was "inconsistent with just and equitable principles of trade."

*People ex rel. Johnson* v. *N. Y. Produce Exchange,* 8 Misc. Rep. 552, reversed.

(Argued April 20, 1896; decided May 26, 1896.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made July 12, 1894, which reversed an order of the Special Term denying a motion for a peremptory mandamus to restore the relator to his privileges as a member of the New York Produce Exchange, from which he had been suspended by the board of managers, and granted the writ.

The appellant is a corporation created by special act of the legislature. (Laws of 1862, chap. 359.) The name of the original corporation was changed to the New York Produce Exchange by an act passed February 13, 1867, amending the charter, and several other amendatory acts were subsequently passed. The third section of the charter declared the purposes of the corporation to be "to provide and regulate suitable room or rooms for a produce exchange in the city of New York, to inculcate just and equitable principles of trade, to establish and maintain uniformity in commercial usages, to acquire, preserve and disseminate valuable business information, and to adjust controversies and misunderstandings between persons engaged in business." It was authorized to "make all proper and lawful by-laws, not contrary to the Constitution and laws of the state of New York or of the United States," and "to admit new members and expel any member in such manner as may be provided by the by-laws," and the charter provided that the "property, business and concerns" of the corporation should be managed by a president, vice-president, treasurer and twelve managers. The charter authorized the board of managers to elect annually five members of the association to act as an arbitration committee, to hear and decide any controversy which may arise between members and as may be voluntarily submitted to said committee for arbitration, and authorized a formal submission to be made in

writing of any controversy which might be the subject of an action at law or in equity, and an award to be made upon which a judgment of the Supreme Court might be entered.

In 1864, many years before the relator became a member of the exchange, the corporation enacted the following by-law, which has remained unchanged from that time:

" Sec. 32.   Any member of the Produce Exchange who shall be accused of willful violation of the charter or by-laws, or of fraudulent breach of contract, or of any proceeding inconsistent with just and equitable principles of trade, or of other misconduct, shall, on complaint, be summoned before the complaint committee, when, if he desire, he shall be heard in his defense.   Should the committee be unable to conciliate the disputants, or induce them to arbitrate, and the circumstances seem to warrant, the complaint shall be referred to the board of managers, when both plaintiff and defendant shall have an opportunity to be heard again in person, prior to final action in the case ; and if, in the opinion of the board, the charge or charges against said defendant be substantiated, it may, by a vote of not less than two-thirds of all the members present, either censure, suspend or expel him from the exchange."

December 22, 1892, Whitman Brothers, a firm, the members of which were members of the exchange, filed a complaint addressed to the chairman of the complaint committee of the exchange, accusing the relator " of proceedings inconsistent with just and equitable principles of trade, as follows :   Non-fulfillment of contract of November 16th, 1892."   The relator and Whitman Brothers on due notice appeared before the complaint committee on the next day.   The subject-matter of the complaint was stated to the committee, the parties made their statements respectively in relation to the subject-matter of the complaint and gave their explanations and introduced various letters and memoranda bearing upon the transaction involved.   The relator declined to submit the dispute to arbitration, and the committee, being unable to conciliate the disputants, referred the matter to the board of managers pur-

suant to sec. 32 of the by-laws.  On the hearing before the committee it appeared that November 16, 1892, the relator executed and delivered to Whitman Brothers a contract in writing as follows :

" NEW YORK, *November* 16*th*, 1892.

" Messrs. WHITMAN BROTHERS, Produce Exchange, City :

GENTLEMEN :   We herewith confirm sale to you of 1,000 bbls. prime crude cotton oil from Sulphur Springs and Wolfe City, Texas, at 26½ cts. per gallon, delivered New York city, in tank cars, to be furnished the mills by you as needed.

" Yours very truly.

"TANK COTTON OIL AGENCY OF NEW YORK..

" EDWIN L. JOHNSON."

Whitman Brothers on the 19th of November forwarded one tank car from Little Rock, Ark., to Sulphur Springs, and another on the 22nd of November, to receive the oil, and were about to forward cars to Wolfe City for the same purpose, but being informed by the proprietor of the mill there that there was no oil to fill them, did not send them.  The oil was not furnished ; the relator was so informed, and he did not perform his contract.  The price of oil largely advanced after the making of the contract, and at the time of the hearing before the committee the aggregate advance was, as was admitted by the relator, about $8,000.  The complaint was founded upon the non-delivery of the oil.  The relator claimed before the committee that in making the contract he acted as agent for the mills, and that Whitman Brothers had notice of the fact, and insisted that he was not personally liable to perform the contract.  He did not claim he informed Whitman Brothers that he was acting as agent, but that from the face of the contract this was inferable, and that Whitman Brothers knew that he was a broker in oils.  Whitman Brothers denied that they knew or supposed the relator was acting as agent, and insisted that the contract was made by him as principal.  The complaint committee having referred the matter to the board of managers, the relator was notified that the matter would be heard before the board on the 28th of December.  The

parties appeared on that day. They respectively made their statements. The relator claimed, as before the complaint committee, that the contract was not binding upon him personally, and that he was acting as agent only and could not contract the delivery of the oil. In the proceedings before the managers, which are set out in full in the record, is the following: " Mr. Outerbridge (one of the board): Mr. Johnson, you read a letter from the president of the mills a few minutes ago in which he stated that he had sold you this oil; that it was a very cheap purchase, etc. At the same time you stated that you had bought no oil. Can you explain why he says he had sold you the oil? Mr. Johnson : If he had sold me the oil, why should he pay me the commission? Mr. Romer : He could have sold you less the commission. Mr. Johnson : I never yet had the commission when I was the purchaser of the oil." After the hearing the board of managers, by a unanimous vote, suspended the relator during the pleasure of the board, and this is the action sought to be reversed in this proceeding. The by-laws of the exchange required that a person becoming a member should sign " an agreement to abide by the charter, by-laws and rules of the exchange," and the relator conformed to this regulation.

*Abel E. Blackmar* for appellant. As the court has granted a peremptory writ, all disputed questions of fact must be resolved in favor of the defendant. Only those portions of the plaintiff's affidavits not denied can be taken as true and the answering affidavits are conclusive. (Code Civ. Proc. § 2070; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95; *People ex rel.* v. *Cromwell*, 102 N. Y. 477; *People ex rel.* v. *Brush*, 146 N. Y. 60.) The exchange had jurisdiction to censure, suspend or expel its members for conduct inconsistent with just and equitable principles of trade, and the by-law in question is valid. (*People ex rel. Thatcher* v. *N. Y. Comcl. Assn.*, 18 Abb. Pr. 271; *Hurst* v. *N. Y. Prod. Ex.*, 100 N. Y. 605; *Payn* v. *Board of Trade*, 45 Ill. 112; *Dickenson* v. *Chamber of Commerce*, 29 Wis. 45.) The complaint of Whitman

1896.] Peo. ex rel. Johnson *v.* N. Y. Produce Exch. 407

N. Y. Rep.] Points of counsel.

Bros. against plaintiff was sufficient to confer jurisdiction upon the complaint committee to entertain, and upon the board of managers to try it. (*People ex rel.* v. *Med. Socy. of Erie*, 32 N. Y. 187; Angell & Ames on Corp. [11th ed.] §§ 412, 422; *People ex rel.* v. *Chicago Board of Trade*, 45 Ill. 112; *People ex rel. Thatcher* v. *N. Y. Comcl. Assn.*, 18 Abb. Pr. 271; *Hurst* v. *N. Y. Prod. Ex.*, 100 N. Y. 605; *Dickenson* v. *Chamber of Commerce*, 29 Wis. 45; *State ex rel.* v. *Chamber of Commerce*, 47 Wis. 670; *Blumenthal* v. *Chamber of Commerce*, 7 Wkly. Cincinnati Law Bull. 327; *People ex rel.* v. *M. M. P. Union*, 47 Hun, 273; 118 N. Y. 101; *People ex rel.* v. *F. M. B. Society*, 65 Barb. 357.) It was for the board of managers and not for the court to determine whether the conduct of the plaintiff was unjust and inequitable. This determination is not subject to collateral review, except for bad faith in its exercise, and where bad faith is denied it cannot be reviewed in proceedings for a peremptory writ of mandamus. (*Richardson* v. *Freemantle*, 24 L. T. R. 81; *Littleton* v. *Blackburn*, 53 L. T. [N. S.] 641; *Dawkins* v. *Antrobus*, L. R. [17 Ch.] 615; *Inderdick* v. *Schnell*, 2 Mac. & G. 216; *Hopkinson* v. *Marquis of Exeter*, L. R. [5 Eq. Cas.] 68; *White* v. *Dawson*, 7 Ves. 35; *Hurst* v. *N. Y. Prod. Ex.*, 100 N. Y. 605; *Comm.* v. *Union League*, 135 Penn. St. 301; *State ex rel.* v. *Milw. Chamber of Commerce*, 47 Wis. 670; Angell & Ames on Corp. § 418; *People ex rel.* v. *Board of Trade*, 45 Ill. 112.) The allegations regarding arbitration are all irrelevant to the inquiry. (*Ryan* v. *Cudahy*, 50 Ill. App. 568; Code Civ. Pro. § 2070; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95.) The question of the then pending action at law by Whitman Bros. against the relator has no bearing on this case. (*In re Smith*, 10 Wend. 449.) The cases where the members have been held entitled to be reinstated, because the cause of expulsion is foreign to the purposes of the corporation, do not apply. (*People ex rel.* v. *N. Y. Cotton Exchange*, 8 Hun, 216; *People ex rel.* v. *N. Y. Board of Fire Underwriters*, 7 Hun, 248.)

*Ben L. Fairchild* for respondent. The by-laws of defendant are consistent with its charter. But defendant seeks additional powers through an unwarranted construction of the by-laws. (*People* v. *Bd. of Trade*, 45 Ill. 112; *Graham* v. *Chamber of Commerce*, 20 Wis. 63.) The defendant claims by indirect methods to exercise arbitrary powers paramount to the courts, and not to be interfered with by them. (*Thomas* v. *M. M. P. Union*, 121 N. Y. 45.) Independent of the statute the corporation had no power whatever to disfranchise the relator. (*Bagg's Case*, 11 Coke, 93; Wilcock on Corp. 270; *Bruce's Case*, 2 Strange, 819; *Earle's Case*, Carthew, 173; *Richardson's Case*, 1 Burr. 517; *Evans* v. *Philadelphia Club*, 50 Penn. St. 114, 117; *Commonwealth* v. *St. Pat. Ben. Soc.*, 2 Binn. 448; *People ex rel.* v. *Med. Socy. of Erie*, 32 N. Y. 194; *White* v. *Brownell*, 4 Abb. Pr. [N. S.] 192; Angell & Ames on Corp. § 410.) The power to disfranchise must be expressly conferred, and not general, in its terms. The courts will inquire into and punish abuses. (*People ex rel.* v. *Med. Socy. of Erie*, 24 Barb. 570; *In re B. B. Assn.*, 2 Wright, 298; 11 Casey, 151; *Fawcett* v. *Charles*, 13 Wend. 474; *People ex rel.* v. *N. Y. Cotton Exchange*, 8 Hun, 216; *People ex rel.* v. *N. Y. Comcl. Assn.*, 18 Abb. Pr. 271; *Cuppel* v. *Chamber of Commerce*, 47 Wis. 670.) The presumption is against the power to disfranchise. (*People ex rel.* v. *Med. Socy. of Erie*, 32 N. Y. 185; *White* v. *Brownell*, 4 Abb. Pr. [N. S.] 162.) The general power to suspend, granted by the charter of the defendant and provided for in its by-laws, was exceeded by the action taken upon the charge made by Whitman Bros. (*People ex rel.* v. *Med. Socy. of Erie*, 24 Barb. 570; *People ex rel.* v. *Med. Socy. of Erie*, 32 N. Y. 185; *People* v. *Bd. of Trade*, 45 Ill. 112; *People ex rel.* v. *N. Y. Cotton Exchange*, 8 Hun, 216; *Commonwealth* v. *St. Pat. Ben. Soc.*, 2 Binn. 449; *White* v. *Brownell*, 4 Abb. Pr. [N. S.] 162.) There being no dispute as to the facts — purely a question of law being involved — a peremptory writ of mandamus is the proper remedy. (Code Civ. Proc. § 2070.)

ANDREWS, Ch. J.  The relator, by the action of the board of managers, has been deprived of a valuable right appertaining to membership in the exchange, and if the board, in suspending him, transcended its jurisdiction, the relator is entitled to invoke the aid of the court to undo the wrong which he has suffered.  The visitatorial supervision inherent in the courts (when not regulated by statute) over the affairs of public or private corporations, extends to the investigation of their proceedings for the purpose of keeping them within their chartered powers and protecting the rights of members against usurpation of the governing body to their prejudice. (1 Bl. Com. 381; High on Extraordinary Rem. § 293.)

But the serious character of the action of the board of managers in this case, as affecting the relator, furnishes no ground for judicial interference, provided the board proceeded under the authority of the charter of the exchange and of by-laws legally enacted.  He could not be expelled for any cause without notice and an opportunity to be heard before the sentence was passed, because this is required by a fundamental principle of justice.  But the relator had full notice of the proceedings against him and was fully heard, and the only questions open to him are the jurisdiction of the tribunal before which he was summoned, to entertain the proceeding, and upon the evidence presented before it, to adjudge his disfranchisement, and the question of the regularity of the proceedings.  We do not refer to the jurisdiction of courts to interfere in cases of collusive or fraudulent judgments, because no fraud is, or could, upon this record, be asserted.  The general rule in respect to the conclusiveness of proceedings of private corporations disfranchising a member is stated with remarkable force and clearness by Chief Justice GIBSON in *Black and White Smiths' Society* v. *Vandyke* (2 Whart. 309), in the case of an action brought for weekly dues against a benefit society by the plaintiff, who had been expelled from membership under the rules and by-laws.  The learned chief justice said: " Into the regularity of these proceedings it is not permitted us to look.  The sentence of the society, acting

52

410   Peo. ex rel. Johnson v. N. Y. Produce Exch.   [May,

Opinion of the Court, per Andrews, Ch. J.   [Vol. 149.

in a judicial capacity and with undoubted jurisdiction of the subject-matter, is not to be questioned collaterally while it remains unreversed by superior authority.   If the plaintiff has been expelled irregularly, he has a remedy by mandamus to restore him; but neither by mandamus nor action can the merits of the expulsion be re-examined." (See *Lewis* v. *Wilson*, 121 N. Y. 284; also Angell & Ames on Corp. § 418.) We venture to suggest that if the language from the opinion quoted needs qualification, it is in the inference that under no circumstances can the merits of an expulsion be re-examined. It would seem, in view of the generally summary character of the proceedings, and that they are not subject to review by the ordinary process of appeal, that a total absence of evidence to support the sentence of expulsion should have the same force in a mandamus proceeding as an absence of jurisdiction to make any inquiry at all.   The court in determining the present case is, therefore, restricted to the question of jurisdiction of the board of managers to expel or suspend the relator from the privileges of membership.   It proceeded under the by-law No. 32, and to justify its action the by-law must have been authorized by its charter, and in addition a by-law must state the causes of expulsion with such reasonable degree of certainty that a member may know the transgressions which will subject him to the penalty.   The simple fact of non-performance by a member of a contract is not, we think, within the by-law.   In some exchanges the mere fact that a member is unable to perform his contracts is a ground for suspension or expulsion under the by-laws, irrespective of the reasons for such disability, whether from business misfortunes or other innocent cause.   The interests of associations where such a rule obtains are deemed to require that persons unable to perform their pecuniary engagements, shall not be entitled to the privileges of membership, and a by-law giving effect to this policy, if authorized by the charter, is valid.   But the by-laws of the Produce Exchange do not make the mere breach of contract, unaccompanied by any moral delinquency, a cause of expulsion.   The language is inconsistent with such a con-

struction. The accusation which gives the board of managers the right upon investigation and hearing to expel a member must be of "willful violation of the charter or by-laws, or of fraudulent breach of contract, or of any proceedings inconsistent with just and equitable principles of trade, or of other misconduct." If the simple breach of contract was intended to be sufficient cause, irrespective of the circumstances or motive of the party by whom the breach was committed, the language of the by-law was not only unnecessary but misleading. But we are of the opinion that the by-law extends to conduct in respect to a contract either in its inception or execution, or the failure to execute it, which is inconsistent with just and fair dealing, although it may fall short of actionable fraud, and although it is not of that specific and definite character of which the law in an action between the parties will take notice. The law does not undertake to enforce mere moral obligations. Their observance, however, by parties to contracts is required by the principles of commercial honor and integrity, and it would seem to be the policy as well as duty of an association organized to inculcate just and equitable principles of trade, to discourage by disciplinary sanction any disregard of business rectitude on the part of its members in their business transactions.

It is manifest that a contract valid in form and enforceable by action may nevertheless have been induced by unfair dealing and that its performance may be evaded upon unjust or frivolous pretenses. To such or similar conditions, the by-law, by the fair construction of its language, applies, and this construction is strengthened by the fact that in 1864 the by-law, which before that time was in other respects substantially similar in language to the present one, was amended by inserting the phrase "or any proceeding inconsistent with just and equitable principles of trade." Neither does the fact that a contract is enforceable at law withdraw it from the jurisdiction of the board of managers under the by-law in question. The decision of the board on the question of expulsion, although the inquiry may necessarily involve a determination

of the fact whether a contract has been entered into, and its breach, is not *res adjudicata* in an action subsequently brought on the contract in a court of justice. The inquiry is for a special and limited purpose, and the decision is effective only for the purpose for which it was instituted, namely, to ascertain the liability of the party against whom the complaint is made to expulsion from the association under the by-law, a decision reviewable by the courts only on the question of jurisdiction.

We are also of the opinion that the by-law was authorized by the charter of the exchange, and was sufficiently definite and specific. Whatever rule of the association was calculated " to inculcate just and equitable principles of trade " (one of the purposes specified in the charter), was authorized under the power granted to make " all proper and needful by-laws." A by-law requiring the members in their dealings to maintain just and equitable principles, under penalty of expulsion for a disregard of those principles, has an obvious and direct influence in inculcating those principles. It did not, it is true, enumerate the specific acts which constitute a violation of the by-law. This was plainly impracticable, and, if an enumeration had been attempted, it would have left a wide field within which, and outside of the acts enumerated, practices inconsistent with just dealing might be indulged. There is no difficulty ordinarily in a man knowing when he transgresses the limits of fairness and justice in his transactions. The conscience is a monitor which seldom is so obscured that a man does not know right from wrong. The generality of the by-law is, therefore, no objection to its validity. It results from the nature of the subject with which the corporation was dealing.

Objection is made that the complaint made against the relator was insufficient to confer jurisdiction, in that, as is insisted, it makes a simple breach of contract the gravamen of the offense. This was the point of difference between the two opinions in this court in the case of Hurst against the present appellant (100 N. Y. 605 ; *S. C.,* 1 Cent. Rep. 264), where a

complaint was framed in substantially the same language as the complaint in this case, and the point was left undecided. But the best reflection which we can bring to bear, brings us to the conclusion 'that the complaint, although somewhat indefinite, was sufficient in form to fairly inform the relator that he was charged with proceedings inconsistent with just and equitable principles of trade. It is admitted in the learned brief of his counsel that if the complaint had accused the relator of inequitable conduct " in matters relating to the contract of Nov. 16, 1892," then no lack of jurisdiction would have been disclosed on the face of the complaint. We think the complaint, although informal, was intended to and did in substance make this accusation. To require technical precision in complaints of this character, drawn by merchants or business men, and to apply to them the strict rule of pleading in an action in a court of law would greatly embarrass and many times defeat the disciplinary regulations of such associations. Members are entitled to fair dealing and to have their substantial rights protected. But the proceedings in such cases are necessarily somewhat summary, and mere informality, when substantial rights are preserved, ought not to render them void. We think the complaint was sufficient in form and substance to give jurisdiction to the board of managers under the by-law to make the inquiry.

The final question relates also, we think, to a question of jurisdiction, namely, whether there was evidence tending to support the decision of the board of managers. If the evidence simply established a breach of contract, without more, the decision could not, we think, be sustained. But if it justified the conclusion or gave reasonable basis for an inference that the failure of the relator to perform the contract for the sale of the oil was because of the large advance in the market price, and that his assertion that he made the contract as agent, and not as principal, was put forward in order to cover his escape from personal liability and rested upon no substantial ground, then we think we are bound under the settled doctrine to maintain the action of the board of managers. Conduct such

as has been stated would be inconsistent with just and equitable principles of trade. The question for the court is not whether, passing upon the evidence as *res nova*, it would have reached the same conclusion as that of the board of managers, or whether the conclusion was reasonable or unreasonable, but simply and wholly whether the case was so bare of evidence to sustain the decision that no honest mind could reach the conclusion that the relator's conduct was "inconsistent with just and equitable principles of trade." (See *Dawkins* v. *Antrobus*, L. R. [17 Ch. Div.] 615.)

We cannot say this, and the judgment and order below should, therefore, be reversed, and the order of the Special Term denying the peremptory writ should be affirmed.

All concur.

Ordered accordingly.