(Hamilton County Court of Common Pleas.)

STATE OF OHIO ex rel. CHARLES BISHOP, v. THE CINCINNATI CHAMBER OF COMMERCE & MERCHANTS' EXCHANGE.

1. A person becoming a member of an association is bound by the constitution, by-laws, rules and regulations of such an association.

2. When a member of an association is placed upon trial for the violation of its rules, and where such association has acquired jurisdiction of the person and subject matter, upon a collateral attack upon the judgment of such an association, a court of law will not look into the irregularities of such proceeding, or errors committed.

3. A member of an association, upon trial, may waive any of the provisions of the constitution, rules and regulations of such an association.

4. An informal ballot may be taken by committee or trial court of such an association, and when agreed by committee or trial court to be an informal ballot, such ballot neither acquits nor convicts.

DAVIS, J.

The relator, Charles H. Bishop,, filed his petition against the Cincinnati Chamber of Commerce & Merchants' Exchange, asking that he be restored as a member of said association. The petition avers that the board of directors of the said association consists of fifteen members, and that the constitution, by-laws, rules and regulations of said association, contain provisions for the trial of a member for misconduct against the association, or misconduct against a member of such association, and that it requires a majority of the board of directors to convict. That such charges shall be addressed to the president of the association in writing, who shall appoint a committee of three of the directors to endeavor to reconcile matter in dispute, and should said committee fail, and find that the charge is a proper one, they shall report the same to the board of directors for trial. Notice in writing of the time of the trial, and a copy of the charges shall be served upon the accused member.

That said association is incorporated under the laws of the state of Ohio, and is the owner of certain valuable property, consisting both of realty and personalty, in the city of Cincinnati.

That said relator, Charles H. Bishop, has been a member of the Cincinnati Chamber of Commerce and Merchants' Exchange, for a great many years, and that on or about the 31st day of December, 1896, one Lyman Perin, Jr, filed charges against the relator, C. H. Bishop, which charges were in writing, setting forth that said C. H. Bishop had been guilty of violating the rules and regulations of said association, and guilty of unmercantile conduct. Said charges contained an exhibit, which it is admitted by the relator herein, was caused to be published by him in the "Cincinnati Post," which exhibit is as follows:

"To the trade: The Pillsbury Washburn Flour Mills Company has frequently suffered considerable annoyance because its "Pillsbury's Best" brand of flour has been counterfeited, and genuine barrels repacked with low grade of flour and sold as the real "Pillsbury's Best" by unscrupulous parties. In Chicago, J. W. Eckert & Co. were recently detected in re-filling "Pillsbury's Best" barrels, and were promptly enjoined by the federal court from continuing this kind of work. It has always been the custom of the Pillsbury Company to insure the delivery of genuine flour by securing a responsible and exclusive distributing agent for each city or district. The C. H. Bishop Flour Company, is the only authorized agent by which the genuine "Pillsbury's Best" flour is distributed in Cincinnati and vicinity, and the source from which the firm of Lyman Perin & Sons has for months past obtained its "Pillsbury's Best" flour, has been J. W. Eckert & Co. of Chicago, and the Pillsbury Company have in their possession the affidavit of a responsible grocer, who was an eye witness to the re-filling of "Pillsbury's Best" barrels by Perin & Sons. When these facts and the cut price of Perin & Sons are considered, the public can draw their own conclusions. The Pillsbury Company give notice that they are not and will not be responsible for flour distributed in Cincinnati by any other firm than the C. H. Bishop Flour Company. Durst Milling Co., Dayton, Agents.

Note.—Our mill numbers are placed on bottom of every barrel of genuine "Pillsbury's Best" and should always be there. Look for them."

That the hearing and trial of said charges was set for January, 12th, 1897.

The petition further avers that at the conclusion of the taking of the testimony on January 12th, 1897, said board proceeded to take a vote as to whether the said C. H. Bishop was guilty or not under said charges. And further avers that said vote resulted in finding the relator not guilty, for the reason that only eight members of the board of directors were present upon that occasion, and that only six out of the eight votes were

for guilty, and that two were for not guilty; and that thereupon the Board adjourned to January 15th, 1897, for further consideration of said case.

An answer was filed by respondent admitting many of the averments of the petition, and denying others.

A person becoming a member of an association or a religious society, whether the same is incorporated or not, is bound by the constitution, by-laws and regulations of such society or association.

The testimony in the case discloses that a trial was had on the 12th day of January, 1897, of the relator. And that relator was present in person. And that if he had not been served with a full copy of the charges that he waived the same by his appearance and by making a defense for himself, and at no time did he object to the trial.

"Constitutional or statutory provisions intended for persons' benefit may be waived by them." Butt v. Green, 29 Ohio St., 667, 671. If a citizen can waive constitutional and statutory rights, then certainly a member of an association can waive any of the provisions of the rules and regulations of an association or society. 7 Bull., 327; 2 Bull., 125; 3 Bull., 295; 110 Cal., 297-508, 149 N. Y., 401-404; 80 Ill., 137.

At the close of the trial there were only eight members of the board of directors present; there had been, however, eleven directors present at the beginning of the trial, three members asking to be excused at or near the completion of the taking of the testimony. The excusing of said three members by the president of the board of directors, was not objected to by said C. H. Bishop at that time or at any other time.

At the conclusion of the hearing of the evidence, a proposition was made by some one, that an informal ballot be taken to get the sense or the feeling of the eight members present: although Mr. Jones, one of the members present, testifies that he considered or understood that it was to be a final ballot, and that a motion to reconsider the action of the eight members present, was made, and that the motion to reconsider was carried. But the testimony of a majority, or more than a majority, of all the members present, is to the effect that it was simply and purely an informal ballot to get the sense and feeling of the members present; and whether the vote was reconsidered, as testified by Mr. Jones, or whether it was an informal ballot, as testified by a majority of the eight members, it was unanimously agreed by the eight members then present, that no record should be made of this vote, and no record was ever made of it, which clearly shows that it was never intended to be a formal ballot, but an informal one; said informal vote stood six votes for guilty and two for not guilty. Thereupon, by unanimous consent of all the members present no record was ever made of any vote, except the motion to adjourn until January, 15th, 1897, to further consider the case. The ballot of the 12th being informal and by

consent of all no record made of the same, such vote neither acquits nor convicts. On January 15th, 1897, eleven members out of the fifteen members of the board were present. The testimony on January 12th, had been taken by a stenographer and was transcribed and was before the board of directors on January 15th, 1897. And the relator, Mr. C. H. Bishop, sent a long communication which was presented to the board of directors, and the same was read as an argument or reason why he was not guilty.

The testimony was read in parts, and after some consideration, a motion was made as to whether the relator, C. H. Bishop, should receive a reprimand or not. It is admitted that eight directors voted that he should receive a reprimand, three of the directors voted that he should not. Mr. J. W. Dunn, one of the directors who voted that he should receive a reprimand, was one of the directors who left before the conclusion of the testimony on the 12th, and it is urged now, that inasmuch as Mr. Dunn voted to find Mr. Bishop guilty or that he should receive a reprimand on the floor of 'Change, that said action was null and void.

Mr. Bishop, in his communication to the board of directors, on January 15th, 1897, admits that he published in the Cincinnati Post Exhibit "A" attached to the charges of Lyman Perin Jr. Mr. Dunn was present when this evidence was offered. In fact this is the only charge made against Mr. Bishop. Whatever other evidence was taken it does not appear and cannot appear in this trial and it is for the committee of the Chamber of Commerce or its trial body to determine as to whether Mr. Bishop was guilty or not guilty of unmercantile conduct when he published in the Cincinnati Post Exhibit "A," referred to in the charges of Lyman Perin, Jr. If the board of directors or the trial body of said association finds that publication to be a violation of the rules and regulations of said association, or to be unmercantile conduct towards the association or against one of its members, the finding of that tribunal is final, and cannot be reviewed in this court.

Mr. Bishop knew that Mr. Dunn had left a few minutes before the concluding of the testimony taken on January 12th, and he made no objection. The testimony disclosed that Mr. Bishop was informed on the evening of January, 12th, that the board had adjourned to further consider his case on January 15th, 1897, and no objection had been made by Mr. Bishop to any part of the proceedings, or to any vote, except that he in person and by long argument presented to the board on both occasions, and tried with his best abilities to convince the board that what he had done was not in violation of any of the laws governing said association.

Mr. Bishop was notified of the action of the board on January 15th, 1897, and that said board had taken a final vote and that its finding was that he be reprimanded on the floor of 'Change in open meeting and

that such reprimand was to be received on the 20th day of January 1897.

Thereupon Mr. Bishop replied that he did not propose to be reprimanded on the floor of 'Change and refused to be present, and on the 21st of January, 1897. James M. Glenn Michael Ryan Thomas Morrison H. H. Meyer and R. Ballard preferred charges in writing against C. H. Bishop charging him with misconduct towards the said association, and notified him in writing that said cause would stand for hearing January 22nd 1897.

The said relator refused to appear before said board on January 22nd, 1897, and he was found guilty by unanimous vote; and thereupon it was ordered that he should be indefinitely suspended.

The court finds that Mr. Bishop appeared at the trial on January 12th, 1897, in person and made no objections to any part of the proceedings, and that whatever irregularities or otherwise there were, the same have been waived by Mr. Bishop. That whatever ballot was taken on January 12th, 1897, at the conclusion of said trial, was informal, and no record was ever made or intended to be made by said board. That said meeting adjourned regularly to January 15th, 1897, of which adjournment Mr. Bishop had full notice, and that the said adjournment was regular in all respects, and that Mr. Bishop appeared by long argument or communication before this meeting, and that the same received full consideration. That the evidence was reconsidered at the meeting of January 15th, 1897, and that by a majority of the vote he was found guilty. That said trial of January 12th, was substantial compliance with the by-laws, rules and regulations, and that all proceedings subsequent thereto, were in strict accordance with the by-laws, rules and regulations of said association.

Relator is therefore not entitled to a writ of mandamus, and his petition is dismissed.

William Littleford, for Relator.

Drausin Wulsin and F. O. Suire, for Respondent.