and who sets forth fully therein all the transactions between the parties, should not be required to furnish a bill of particulars.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 954–962; Dec. Dig. § 317.*]

Appeal from Special Term, Albany County.

Action by the Wilson & Baillie Manufacturing Company against T. Henry Dumary. From an order directing plaintiff to furnish a bill of particulars, he appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

George C. Case, for appellant.

Thomas F. Powers, for respondent.

HOUGHTON, J. The action is for money loaned to and expended by the plaintiff for the defendant. Annexed to the complaint and made a part of it is a full debit and credit account of the transactions had between the parties upon which the plaintiff bases its cause of action. On motion of the defendant the court required the plaintiff to furnish a bill of particulars of the time when the amount claimed by plaintiff was advanced to the defendant, and the place where, and whether paid in cash or by check, and also who was present when the loan was made, and whether the defendant delivered any collateral security for the same.

It was improper to compel the plaintiff to furnish a bill of particulars of the persons present at the time when the transactions between the parties were had. It is not the office of a bill of particulars to furnish a list of the witnesses of the adverse party. The plaintiff having made the account out of which it claims the indebtedness of the defendant accrued a part of its complaint, and having set forth fully therein all the transactions claimed to have been had between the parties, no further bill of particulars should have been required. Section 531 of the Code of Civil Procedure provides that an account need not be set forth in a pleading, unless the party so chooses, and that, if the account upon which the cause of action rests is not set forth, the opposite party is entitled to a bill of particulars. Where the account is fully set forth, there is no occasion for any further bill of particulars, because the opposite party is furnished with all the items in controversy. Seed v. Fairchild, 83 App. Div. 629, 82 N. Y. Supp. 490.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

---

(69 Misc. Rep. 60.)

### SMITH v. AMERICAN AUTOMOBILE ASS'N et al.

(Supreme Court, Special Term, Kings County. September, 1910.)

CONTRACTS (§ 284*)—PRIZES—DETERMINATION OF RIGHT—REVIEW.

    The decision of an officer or tribunal constituted by an association conducting a sporting contest to decide questions arising under the rules governing the contest, including the question of who is the winner, is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*not subject to judicial review, in the absence of fraud, unless such decision is so bare of evidence to sustain it that no honest mind could reach the same result.*

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1340; Dec. Dig. § 284.*]

Action by Harold C. Smith against the American Automobile Association and others. On motion to continue an injunction. Injunction dissolved.

George C. Lay (Sidney S. Corham, of counsel), for plaintiff.

Job E. Hedges, for defendants Chalmers Motor Co. and Dunham.

Charles Thaddeus Terry, for defendants American Automobile Ass'n and Butler.

PUTNAM, J. This is a motion to continue the temporary order of July 23d, restraining the delivery of the 1910 Glidden trophy. The referee, Mr. A. H. Whiting, decided in favor of the plaintiff's car. The contest board, however, sustained an appeal, and awarded the trophy to the Chalmers Motor Company. Plaintiff charges that this action of the contest board was unwarranted, being against the association rules, contrary to the terms and conditions under which the contest took place, and a breach of the trust created by the donor's deed of gift. This suit seeks to set aside the decision of the contest board and to reinstate plaintiff as winner.

In 1905 Mr. Charles J. Glidden offered this trophy for yearly competition under the terms of a deed of gift to the American Automobile Association, providing for the adoption of rules to govern such contests. This was to be a reliability run, since called the "Glidden Tour." The deed of gift (as later modified) declared that this trophy should be competed for annually by members of the association, and that the winner should hold the trophy until won by another. The American Automobile Association had adopted various rules through its contest board, to which has been delegated the regulation of such competitions. In March, 1910, the contest board issued advance copies of a set of rules, called the "1910 Contest Rules," intended to govern the various competitions to be conducted under sanctions issued by that board on behalf of the association. These were subdivided to apply to many different contests, including reliability tests.

The purpose of the Glidden tour is to try out and test the endurance of what manufacturers call a "stock car"; that is, a car such as is regularly sold to purchasers, and not one specially equipped for a contest. In the rules for 1910, the entrant was required to file a stock-car certificate of description, in which the details of the car were fully set forth. A technical committee was to make a preliminary inspection of the stock car to determine if it corresponded with the stock-car certificate. Various provisions were made as to the examination and report by this technical committee, as well as regulating the penalties in the contest after the cars should have entered upon the tour.

Plaintiff was the entrant in the 1910 contest of a Premier car. In the certificate of description was mentioned a hand oil pump and oil

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tank. This car was duly examined by the technical committee and declared to be eligible. During the tour a protest was made upon the claim that this hand pump to inject oil into the crank case of the engine of the Premier car was not a part of the regular stock equipment. At the conclusion of the tour, in which plaintiff's car showed the best score, this protest was considered by the referee, who deferred action until he had received a special report from one of the technical committee who had visited the factory of the Premier Motor Manufacturing Company. Subsequently the referee overruled the protest and declared plaintiff's car the winner. The Chalmers Motor Company, who had entered a car in the name of the defendant George W. Dunham, appealed from this decision to the contest board, which, after notification to the plaintiff, took up the appeal on July 21st, and, after receiving proofs by affidavit and hearing arguments, on July 22d sustained the appeal of the Chalmers Motor Company, on the ground that there was no sufficient evidence to prove that the auxiliary oil tank and pump equipment was stock equipment, so that the Premier company had failed to furnish evidence sufficient to establish the stock status of its cars entered in respect to this lubricating equipment, and, for that reason the Premier cars were disqualified.

It is a primary principle of all sporting contests that rules must be made by the bodies conducting them, and that those regularly appointed must decide who wins. The entrants in such competition, as a matter of fairness, agree to abide by the decisions of the umpires, referees, or boards having jurisdiction, as the rules may provide. Especially is this true in a contest where the points of eligibility are highly technical, and the association is composed of experts who themselves are well fitted to judge. Before a dissatisfied entrant can ask the courts to interfere and set aside the rulings of a sport-governing body, there must must ordinarily be evidence of fraud, either by a competitor or by the official making the decision. The track judges, umpires, referees, executive committees, and governing boards of such associations are supreme within themselves, when acting under their recognized authority. If they give the parties concerned a fair opportunity to be heard, and there is evidence on which their findings can be based, their decisions, in the absence of fraud, are not subject to judicial review. Thus Judge Gildersleeve, delivering an opinion reversing a Special Term order which granted an injunction in favor of a disqualified contestant at a race track, said:

"When the original contract was entered into, * * * the owner of the said colt, in effect, subscribed to the defendant's rules, and they are binding upon his successor. Those rules named the tribunal to which any dispute, that might arise out of the contract, should be submitted. That tribunal was the executive committee of the defendant corporation. They had jurisdiction of the cause of action alleged in the complaint herein, and it was the duty of the plaintiff to submit to their decisions." Corrigan v. Coney Island Jockey Club (Super. N. Y.) 20 N. Y. Supp. 437.

These principles have been generally recognized. The fact that this trophy is of large value, and that, although in the form of a sporting contest, the tour really affords a test of the endurance of a car, from which important financial consequences ensue, does not change the

rule. Such consequences flow from many modern sporting contests, but these results do not give the court jurisdiction.

The rule that courts of equity will interfere to secure the possession of valued objects having a sentimental interest to the owner comes under a different head of the jurisdiction. Plaintiff's proceeding, while nominally to gain possession of the trophy, is in reality to obtain a reversal of the present award, with a reinstatement of the Premier entry as the winner. Were jurisdiction entertained, proof would be naturally taken with respect to the equipment of the 1910 Premier cars from nearly all the large cities of the United States. On this motion, 73 affidavits from 26 cities have been submitted. Upon a hearing on the merits, even with the utmost diligence, such a mass of testimony from widely dispersed points might require several months for its completion. After decision rendered thereon, appeal would naturally follow, so that the final judicial ascertainment of the result of the 1910 Glidden tour might not be reached until other Glidden tours had in the meantime taken place. Heretofore the law has declined this jurisdiction not based on those property rights usually cognizable by courts. To change now and hear the loser in court would also imperil the spirit and interest in all such contests.

In the present case the objections to the form of the appeal and to the proceedings before the contest board are largely technical. While in some respects informal, such proceedings do not appear to lack any substantial protection to all concerned. The high standing of the parties forbids the suggestion of fraud; in fact, upon the argument it was acknowledged that there was no fraud as to any one involved. In the absence of fraud, the question for the court is not whether, passing primarily upon the evidence, it would have reached the same conclusion as that of the contest board, or whether their conclusion was reasonable or unreasonable, but simply and wholly whether the case before them was so bare of evidence to sustain the decision that no honest mind could reach the same result. People ex rel. Johnson v. New York Produce Exchange, 149 N. Y. 401, 414, 44 N. E. 84.

No winner of this trophy has a right to hold it for more than one year, and its ownership remains in the American Automobile Association. There is, therefore, no necessity to impose the terms of a bond conditioned to conform to any future order of this court, as the association is a responsible defendant, able to comply with any final decree.

The temporary injunction is vacated and dissolved, with costs.