FRED G. AUSTIN, trustee in bankruptcy, *vs.* CHARLES
HAYDEN & others.

Suffolk.   December 11, 12, 1922. — March 2, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Res Judicata.   Stock Exchange.   Contract,* Implied.   *Stockbroker.   Supreme
Judicial Court.*

In an action of contract by the trustee in bankruptcy of a firm of stockbrokers
in Michigan against a firm of stockbrokers in Massachusetts for money alleged
to have been received by the defendants to the use of the plaintiff, it appeared
that the money had been received by the defendants from the New York and
the Boston stock exchanges and under their rules because of representations by
the defendants that as a result of court proceedings in Michigan a greater sum
than was so received was adjudged to be due to them from the plaintiff's bank-
rupt firm.   The plaintiff contended that the issues between the parties were *res
judicata* by reason of the proceedings in the Michigan courts, which were in
equity in a Circuit Court and in the Supreme Court of Michigan and were
brought by a receiver of the Michigan firm, appointed in the Michigan court,
against the Massachusetts brokers, and that in such proceedings it had been
adjudged that at their conclusion nothing was due to the defendants from the
bankrupts.   Upon an examination of the entire record of the proceedings in
the Michigan courts, it was *held,* that

(1) The result of that litigation was not to extinguish the debt of the bank-
rupts to the defendants;

(2) The decision by the Michigan courts was to the effect that the defend-
ants, to whom the bankrupt owed a large sum, could not appropriate toward
its payment the entire amount of securities which had been placed in their
hands by the bankrupt, to a part of which intervening creditors of the bank-
rupt were entitled as against the defendants;

(3) From a characterization of the defendants by the Michigan Supreme
Court as "joint tortfeasors" in this connection, it did not necessarily follow
that the defendants, to whom legal bad faith was only constructively imputed,
were *in pari delicto* with the bankrupts;

(4) The defendants' claim against the bankrupts was not one for contribution,
but was for the enforcement of a valid contract wholly collateral to any alleged
tort;

(5) There was nothing in the Michigan proceedings to preclude the defend-
ants from asserting their claim as they did.

The amounts sought to be recovered in the action of contract above described
had been paid to the defendants from the proceeds of the sale of seats on the
New York and on the Boston stock exchanges formerly owned by a member
of the bankrupt Michigan firm.   One of the defendants' firm also was a member
of both of these exchanges.   The two firms had contractual relations with each
other and, after applying to the payment of an obligation due to the defendants
from the bankrupts so much of the bankrupts' securities in the defendants'

hands as the Michigan courts permitted, there still was due to the defendants a sum greater than the proceeds from the sale of the seats on the stock exchanges. Under the rules of the exchanges, the proceeds from the sale of a seat, after payment of fines, dues, assessments and charges of the exchange, were to be applied to "The payment of creditors, members of the Exchange, or firms registered thereon, of all filed claims arising from contracts subject to the rules of the Exchange, if, and to the extent that, the same shall be allowed by" the committee on admissions (in New York), or the governing committee (in Boston). *Held*, that

(1) The courts recognize that when a seat on a stock exchange is sold, and the rules of the exchange so require, the proceeds must first be applied to the members' obligations to the exchange and to the other members thereof in preference to all creditors;

(2) The defendants, in receiving the proceeds of the sale of the seats on the exchanges, received and held the same under a claim of right and were under no obligation to turn over such proceeds to the plaintiff.

A motion by the plaintiff, at the argument before this court of exceptions to rulings at the hearing of the action above described, for permission to introduce in evidence under G. L. c. 231, § 125, and to add to his bill of exceptions certain Michigan statutes and decisions tending to show that, on an appeal to the Michigan Supreme Court from the Circuit Court in proceedings in equity, the Supreme Court "inquires into the facts and forms its own conclusion upon the whole record," was denied.

CONTRACT by the "trustee in bankruptcy of Cameron Currie and Company of Detroit, Michigan," against the members of the firm of Hayden, Stone and Company, stockbrokers having a usual place of business in Boston, with a declaration in two counts, each for money alleged to have been had and received by the defendants to the plaintiff's use, the sum of $90,989.40 being named in the first count and the sum of $30,511.33 being named in the second count. Writ dated September 14, 1917.

In the Superior Court, the action was heard by *McLaughlin, J.*, without a jury, upon an agreed statement of facts and oral testimony. Material evidence and contentions of the plaintiff are described in the opinion. The judge found for the defendants; and the plaintiff alleged exceptions.

At the argument before this court, the plaintiff contended: "On appeals in equity the Supreme Court [of Michigan] inquires into the facts and forms its own conclusions upon the whole record. . . . In contrast to our practice the Appellate Court [of Michigan] exercises its own judgment in passing on the evidence even though the trial court alone had the advantage of seeing and hearing the witnesses." In this connection, the

plaintiff presented a motion under G. L. c. 231, § 125, to be allowed to introduce in evidence before this court "and add to the bill of exceptions" certain statutes and decisions of the Supreme Court of Michigan bearing on that contention, stating further in his brief: "If any point is made that the Michigan statutes and the decisions of the Michigan Courts in relation to chancery appeals ought to have been introduced in evidence in the trial court and not presented as a matter of argument, we respectfully request the permission of this court to allow us, under G. L. c. 231, § 125, to introduce as evidence in this case the statutes and decisions above referred to, and add the same to the bill of exceptions."

*Lee M. Friedman,* (*P. D. Turner* with him,) for the plaintiff.

*C. F. Choate, Jr.,* (*H. W. Beal & J. H. Powers* with him,) for the defendants.

DE COURCY, J. The firm of Cameron Currie and Company was a stock brokerage concern in Detroit, Michigan; and did a considerable business with the defendants, constituting the Boston brokerage firm of Hayden, Stone and Company. On July 18, 1908, the plaintiff Austin was appointed receiver of Cameron Currie and Company by the Circuit Court for the County of Wayne, State of Michigan, in equity proceedings instituted by Cameron Currie, the firm being then in financial difficulties. On July 22 the plaintiff, as receiver, filed in said court a bill of complaint to obtain an accounting from the defendants, and a determination of the rights of certain creditors of Currie and Company in the stocks and bonds held by the defendants as security for the account of Currie and Company; to restrain these creditors from instituting separate suits; and to allow them to intervene to establish their rights. Thereafter the collateral securities were sold, under authority given to the defendants and receiver, and produced $1,666,142.83. The defendants were authorized to retain from the proceeds the sum of $1,340,282.83, with interest; to be held in place of the securities sold. The surplus amounting ultimately to $325,860, they paid to the receiver, as directed, to be held by him subject to further orders of the court. On December 7, 1908, said Austin, as trustee in bankruptcy of Cameron Currie and Company, was substituted as complainant in said cause in place of the receiver.

After a trial of the case the judge of the Circuit Court filed a decree, following an opinion rendered by him, in which he adjudged that "on and after the 23rd day of June, 1908, the said defendants were chargeable with knowledge of said insolvency and of all the rights and equities of the intervenors in this cause to the stocks and securities which were, on and after said 23rd day of June, 1908, in defendants' possession, but that in all cases where the defendants had purchased and paid for securities on the order of said Cameron Currie and Company subsequent to said 23rd day of June, 1908, they were entitled to hold such securities until paid in full therefor, . . . that the total indebtedness on the part of said firm of Cameron Currie and Company to the defendants on said 18th day of July [the date of the failure], was the sum of $1,379,542.01; that said defendants were entitled to assert a lien against the securities in their possession on said 18th day of July, to the amount only of $1,311,186.18." The decree further ordered the defendants to pay over to the complainant, forthwith, "the sum of $90,104.02, said sum being hereby decreed to be the amount to which said complainant is entitled from the proceeds of the sale of the securities involved in this action, in addition to the sum of $324,975.13 heretofore paid over by the defendants to the complainant under the order of the court." An appeal from this decree was taken to the Supreme Court of Michigan. That court, on July 26, 1912, following an opinion, entered a decree affirming the decree of the Circuit Court "in all things except that as to all transactions on and after the 23d day of June, 1908, in which defendants participated, in buying, selling or receiving as collateral stocks and securities of intervenors where ownership in the stocks and securities bought, sold or received as collateral can be traced, such defendants be, and they hereby are, adjudged to be liable to complainant, as representative of said intervenors, in the same manner, to the same extent and with the same rights as are Cameron Currie and Company, but the liability of defendants arising out of transactions occurring on and after said June 23d shall not be affected by the condition of the account of the intervenors with Cameron Currie and Company based on transactions before that date." The case was remanded to the Circuit Court, with directions to recast the accounts and readjust the classi-

fications and apportionments in accordance with the opinion of the Supreme Court and to enter a decree in favor of the complainant as against the defendants for the total amount found due upon such basis.

On December 31, 1912, the judge of the Circuit Court entered a decree accordingly, in which he directed the defendants to pay over to the complainant the sum of $196,248.19 (instead of $90,104.02 as in his former decree), being in addition to the sum of $324,975.13 theretofore paid by order of said court. An appeal was taken from this decree, and the Supreme Court, after further argument, entered a second decree, ordering the defendants to pay over to the complainant the sum of $192,996.82. This sum was thereupon paid to the complainant by the defendants.

While the above litigation was pending in the Michigan court, Hayden, Stone and Company, in December, 1908, filed with the New York and Boston stock exchanges, claims in accordance with the rules of these exchanges seeking to have the proceeds of the sales of Cameron Currie's seats held to pay them the amount, if any, for which the defendants should be held to be general creditors of Cameron Currie and Company and not entitled to reimburse themselves out of the securities they held. In July, 1910, the plaintiff, as trustee in bankruptcy, filed a petition in the District Court of the United States for the Southern District of New York, asking that the New York Stock Exchange be ordered to pay over to him forthwith the proceeds of the sale of the seat of Cameron Currie, less any claims of the exchange and of the fellow members other than Hayden, Stone and Company. This petition was denied, the decree was affirmed by the Circuit Court of Appeals, and a writ of *certiorari* was denied by the United States Supreme Court.

On August 13, 1913, Hayden, Stone and Company advised the New York Stock Exchange that said Michigan Circuit Court had finally determined that the firm of Cameron Currie and Company was indebted to Hayden, Stone and Company in the sum of $1,379,542.01, and that Hayden, Stone and Company were entitled to assert a lien against all stock in their possession held for the account of Cameron Currie and Company, for this amount less $192,996.82; and that as to this latter sum, Hayden,

Stone and Company were to be treated as general creditors. Said stock exchange, acting through its committee on admissions, determined that the firm of Hayden, Stone and Company was a creditor of Cameron Currie and Company, and as such entitled to the entire proceeds of the sale of the Currie seat, and paid over to the defendants the sum of $90,889.48. A similar claim was made on the Boston Stock Exchange; that exchange found that Cameron Currie and Company were indebted to Hayden, Stone and Company in the sum of $192,996.82 less the $90,889.48 received from the New York Stock Exchange; and that Hayden, Stone and Company were therefore entitled to receive the entire proceeds of the sale of the seat of Cameron Currie, namely $30,511.15. That sum was thereupon paid over to the defendants.

This action of contract is brought to recover from the defendants the said sums of money received by them from the New York and Boston stock exchanges, with interest. The case was heard by a judge of the Superior Court without a jury, and he found for the defendants.

The first contention of the plaintiff is, in substance, that as a result of the litigation in the Michigan courts there was no indebtedness due and collectible from Cameron Currie and Company to Hayden, Stone and Company. We do not so interpret the record. The general purpose of the suit in the Michigan Circuit Court was not the recovery of damages, but was primarily the ascertainment of the amount owed by Cameron Currie and Company to Hayden, Stone and Company, and then a determination of how much of that debt Hayden, Stone and Company were entitled to have paid as a first lien upon the securities in their possession. The decree of the Circuit Court of November 23, 1910, fixed the total indebtedness on July 18, 1908, as $1,379,542.01. That amount was not even disputed in the Supreme Court, except as to two items of $4,259.92 for excess commissions charged and $3,000 paid to an expert accountant, which were disallowed by that court. The amount of the indebtedness having been finally established, the Circuit Court, determined how much thereof should be paid from the proceeds of the sale of securities held by Hayden, Stone and Company. As against Cameron Currie and Company the defendants presumably had a lien on all these securities and their proceeds. But the inter-

venors, more than four hundred in number, claimed title to many of them. The controversy was really between them, represented by the receiver, and the defendants. Many of the securities had been fully paid for, and left with Currie and Company for transfer, or for safekeeping; and they, as against their customers, had no right to pledge them. The decree of the Circuit Court of November 23, 1910, ordering the defendants to pay to the receiver $90,104.02 in addition to the surplus of $325,860 theretofore paid, was not based upon any finding that Currie and Company did not owe that money to the defendants, but (aside from items of interest improperly withheld when the surplus was paid into court) because the latter were denied the right of lien on all transactions after June 22, 1908. The decree of the Supreme Court disturbed the findings of the Circuit Court only by adding whatever amounts intervenors should be found entitled to on the basis of their rights and equities with Currie and Company arising from dealings subsequent to June 22, 1908, in which the defendants in any way participated, and in which ownership could be traced. *Austin* v. *Hayden*, 171 Mich. 38, 65. It did not hold that the defendants ceased to be creditors of Cameron Currie and Company for this entire amount of over $192,000, but that they could not collect it from said property of customers of Currie and Company. It is in this connection that the Supreme Court characterized the defendants as " joint tortfeasors;" on which language the present claim of the plaintiff is largely based. See *Austin* v. *Hayden*, *supra*, page 64. It does not, however, necessarily follow from this characterization that the defendants, to whom legal bad faith was only constructively imputed, were *in pari delicto* with Currie and Company so as to bar a claim for contribution. *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24. But the shorter answer is that the claim of the defendants against Currie and Company was not one for contribution, but was for the enforcement of a valid contract wholly collateral to any alleged tort. *Avery* v. *Halsey*, 14 Pick. 174. The important question before the Michigan court was the extent of the lien of Hayden, Stone and Company on certain securities, and it was decided that intervening third parties had a superior equity therein. The decree recognized the liability of the defendants to "complainant as representative of said

intervenors." In the opinion it was stated (page 68): "This suit was instituted to determine adverse claims of ownership of property primarily in the custody of this court, incident to which were the rights of defendants as pledgees." Nowhere does the court say that in executing orders for Cameron Currie and Company, and advancing money to acquire the securities ordered, the defendants' conduct was such as to deprive them of their rights as general creditors, as between the parties themselves. The ordering of a personal decree against the defendants (page 64), which is emphasized by the plaintiff, presumably was necessary because the securities had been sold, and no order made to segregate the proceeds. In our opinion the result of the Michigan litigation was not to extinguish the debt of Cameron Currie and Company to Hayden, Stone and Company, or to preclude the latter from asserting it.

The plaintiff further contends, that even if Hayden, Stone and Company were creditors of Cameron Currie and Company, the payment to the defendants of the proceeds of Currie's seats by the New York and Boston stock exchanges was without right. Cameron Currie and Charles Hayden were members of both exchanges, and their respective firms were registered in accordance with the constitution and rules of said exchanges. Under the rules of both, the proceeds from the sale of a seat, after payment of fines, dues, assessments, and charges of the exchange, are to be applied to "The payment of creditors, members of the Exchange, or firms registered thereon, of all filed claims arising from contracts subject to the rules of the Exchange, if, and to the extent that, the same shall be allowed by" the committee on admissions (in New York), or the governing committee (in Boston). The plaintiff does not question the right of a stock exchange to establish such a rule. The claim of Hayden, Stone and Company was one "arising from contracts" within the rule; as it arose from purchases and sales of securities made by them for the account of Cameron Currie and Company, plus commissions and amounts advanced from time to time. The courts recognize that when a seat is sold, and the rules so require, the proceeds must first be applied to the member's obligations to the exchange and to the other members thereof in preference to all creditors. *Nashua Savings Bank* v. *Sayles*, 184 Mass. 520.

*Hyde* v. *Woods,* 94 U. S. 523. *Sparhawk* v. *Yerkes,* 142 U. S. 1, 12. *In re Gregory,* 174 Fed. Rep. 629. *In re Currie,* 185 Fed. Rep. 263. *Austin, petitioner,* 220 U. S. 621. *People* v. *New York Produce Exchange,* 149 N. Y. 401. Dos Passos on Stock-Brokers and Stock-Exchanges, (2d ed.) 113, 10 R. C. L. 1207. 10 Ann. Cas. 243 note. The trial court correctly ruled that "5. The defendants in this action, in receiving the proceeds of the sale of the seats of Cameron Currie by the New York Stock Exchange and by the Boston Stock Exchange, received and held the same under a claim of right and are under no obligation to turn over the proceeds of these seats to the plaintiff trustee in bankruptcy."

This conclusion renders it unnecessary to consider whether the decision of the United States District Court above referred to (*In re Currie,* 185 Fed. Rep. 263) is *res judicata* as to the defendants' right to the proceeds of the sale of the seat on the New York Stock Exchange.

What we have said disposes of all the other exceptions argued by the plaintiff. There is no occasion to discuss the other defences argued. We are constrained to deny the motion of the plaintiff, made at the time of the argument, to introduce additional evidence in this court under G. L. c. 231, § 125.

*Exceptions overruled.*