JAMES O'BRIEN, APPELLEE, V. SOUTH OMAHA LIVE STOCK
EXCHANGE, APPELLANT.

FILED OCTOBER 13, 1917. No. 19532.

1. **Voluntary Associations:** ENFORCEMENT OF RULES: PROVINCE OF
   COURTS. Courts will not interfere with the enforcement of rules
   and by-laws of an unincorporated voluntary association or ex-
   change, organized, not for pecuniary gain or profit, but to provide
   convenient facilities for the orderly conduct of business at the
   common expense, such rules being reasonable and uniform, and
   not in contravention of the law of the land, nor against ·public
   policy. In such case the association will be left free to enforce
   its rules and by-laws by such reasonable means as it may adopt for
   its government.

2. ———:MEMBERSHIP: AMENABILITY TO RULES. One who becomes
   a member of such association thereby voluntarily agrees to sub-
   mit to its rules and is bound by their enforcement.

3. ———: ———: ANNULMENT. Where a member of such exchange,
   after a hearing, voluntarily pleads guilty to charges of bad faith
   and dishonesty in business dealings with shippers and patrons of
   the exchange, in violation of its rules, and where in pursuance of
   such plea he is expelled from membership, his certificate of mem-
   bership is thereby automatically canceled.

4. ———: CHARGES AGAINST MEMBER: HEARING. In such case a hear-
   ing, conducted in pursuance of charges of bad faith and dishonesty
   preferred against a member of the association, is not to be tested
   by the strict rules of criminal pleading and practice, where the ac-
   cused was notified in writing of the acts of bad faith and dis-
   honesty complained of, and, being present, did not object, but con-
   sented to such hearing and pleaded guilty to such charges.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Reversed.*

*Brown, Baxter & Van Dusen,* for appellant.

*Lambert, Shotwell & Shotwell, contra.*

DEAN, J.

James O'Brien was expelled from membership in the
South Omaha Live Stock Exchange for bad faith and
dishonest conduct, in violation of certain of its rules and

by-laws. The exchange is an unincorporated voluntary association of persons organized for the purpose of establishing and maintaining a commercial exchange, but not for pecuniary gain or profit. Among its professed objects are these: "To inculcate and enforce correct and high moral principles in the transaction of business; to inspire confidence in. the methods and integrity of its members; * * * and, generally, to promote the welfare of the South Omaha market." An initiation fee of $1,000 was paid by Mr. O'Brien for a certificate of membership entitling him to the benefits and privileges of the exchange, the certificate by its recitals subjecting him to an observance of the rules and by-laws of the association. On August 17, 1914, after a hearing, he pleaded guilty before the board of directors to charges filed against him by the prosecuting committee of the association, wherein he was charged with "bad faith and dishonesty" in business transactions with several live stock shippers who were patrons of the exchange. In pursuance of his plea of guilty he was expelled from membership and his certificate of membership was canceled. He commenced this action against the exchange to recover $3,000, the alleged value of the certificate. The case was tried to the court without a jury. A judgment for $1,414 was recovered by him, from which the defendant exchange appealed.

Plaintiff contends that defendant unlawfully canceled his certificate of membership and thereby "forfeited and converted" his property to its own use. The state of the record demands an examination of the rules of the exchange. Section 7 of rule 11 provides that if any member shall "be guilty of any act of bad faith, or dishonest conduct, he shall be censured, fined, suspended, or expelled by the board of directors as they may determine from the nature and gravity of the offense committed." Section 10 of rule 11 provides: "An expelled member shall not be readmitted to membership except upon payment of the regular initiation fee and annual assess-

ment, and upon satisfactory evidence that he is a fit person for membership in the association."

In view of the professed objects of the exchange and of its rules and by-laws, it seems that the expulsion of plaintiff, based as it is on his admission of guilt of bad faith and dishonesty, automatically voided and annulled his certificate. It follows that all of the rights and privileges that were inherent in the certificate before expulsion then instantly ceased. The certificate from that moment was valueless in the hands of any person for any purpose. The cancelation of the certificate by the board, of which plaintiff complains, was therefore a formality both gratuitous and unnecessary.

Can human expression be more clearly and explicitly direct in meaning than the language cited from sections 7 and 10 of rule 11 of the by-laws? Can any reasonable inference be drawn therefrom other than that expulsion of a member for bad faith and dishonest conduct means the utter annulment of the certificate and every privilege that pertained thereto before expulsion? If the act of expulsion on that ground does not cancel the certificate for every purpose for which it was originally intended, no significance can then attach to this language that we find in rule 11: "An expelled member shall not be readmitted to membership except upon payment of the regular initiation fee and annual assessment."

If the rules can be held to contemplate that such certificate, after expulsion for bad faith and dishonest conduct, is of any value in the hands of any person, surely such person would be its former owner, the expelled member, who has repented and who seeks to return. But that is not the language of the rule nor its intent. In order to again become a member after expulsion he must again pay the required initiation fee and annual assessment. Plaintiff assented to this by-law upon assuming membership, and it then became an essential part of the contract between him and the exchange. And it was not an implied, but an express, agreement that lawful expulsion would cancel his certificate and every vestige of priv-

ilege in the exchange theretofore conferred by that instrument. *White v. Brownell,* 3 Abb. Pr. n. s. (N. Y.) 318.

In answer to the suggestion that the punishment of plaintiff for his confessed acts of dishonesty is excessive, it may be pointed out that sections 5 and 6 of rule 9 provide that the mere failure to pay certain assessments for 3 months works a cancelation of the membership certificate, and that "all rights incident thereto shall be taken to have been surrendered and shall thereupon revert to the exchange." It therefore appears that the rights and privileges pertaining to such certificate do not contemplate absolute ownership in the member, but a qualified ownership conditioned upon compliance with rules to which he assented when becoming a member.

A certificate of membership in an exchange is a species of property, but it cannot be bought outright, nor can it be separated from the conditions that the rules impose upon it. And it is those conditions that impart to it value. The rules of the exchange and the conditions of purchase of a certificate are inseparably incident to such certificate in the hands of whomsoever it may come. *Hyde v. Woods,* 94 U. S. 523; *Missouri Bottlers Ass'n v. Fennerty,* 81 Mo. App. 525.

The rules that apply to membership in associations that are organized for profit do not ordinarily apply to membership in voluntary unincorporated associations, organized not for pecuniary gain or profit. In the latter the association will be left free to enforce its rules and by-laws by such reasonable means as it may adopt for its government. This is because the association that is organized for profit deals as an organized entity with the public generally, while in the voluntary association organized not for pecuniary gain or profit the individual members deal with the public and one another. Hence it is imperative that in the business transactions of its membership the highest standards of commercial conduct be maintained. Failing in this the prime object of the exchange would be destroyed, and from this arises the

necessity for the adoption and enforcement of disciplinary rules.

A transcript of the proceedings before the board of directors, wherein plaintiff pleaded guilty to the charges against him, all duly certified by the notary public before whom they were taken, was offered in evidence by defendant, but excluded by the court upon plaintiff's objection. We believe the trial court should have admitted this record in evidence for the reason, among others, that one of plaintiff's contentions is that the proceedings before the board of directors were in some respects unlawful, and that his expulsion was therefore not justified. While the disciplinary proceedings in a voluntary association are quasi-judicial in character, courts do not ordinarily interfere except to discover whether such proceedings have been conducted in good faith and in pursuance of rules and by-laws that are not obnoxious to public policy nor to the law of the land. In a hearing before a voluntary association or exchange for violation of its rules by a member, it is not required that the procedure be tested by the rigid rules of criminal pleading and practice. We discover no substantial irregularities in the proceedings complained of. The tribunal was of plaintiff's own choosing. The hearing appears to have been fairly conducted. Plaintiff was given opportunity to controvert instead of entering a plea of guilty to the charges preferred against him. *Board of Trade v. Nelson,* 162 Ill. 431; *Lewis v. Wilson,* 121 N. Y. 284; *Ihnen v. South Omaha Live Stock Exchange, ante,* p. 195; *Otto v. Journeymen Tailors,* 75 Cal. 308, 7 Am. St. Rep. 156; *Belton v. Hatch,* 109 N. Y. 593.

Plaintiff contends that he was both fined and expelled for the same offense. An examination of the record shows some confusion on this point, but he was not fined. This contention arose from the fact that he with three other partners composed the "Big Four Commission Company," a concern doing business on the exchange, and against this partnership and its members a complaint was filed under another section of the by-laws by the prosecuting

committee for dishonest conduct in rendering separately to 11 shippers "account of sales showing different prices, different docks, and different weights than those shown by original settlements made with purchasers." After a hearing the company was fined $100 and expelled. Both cases were heard the same day, but there were practically two hearings. The company, a separate entity, is not a party to this suit, and any grievance it may have cannot properly be considered here.

In view of the record and of the law applicable thereto, the judgment of the trial court is

REVERSED.

CORNISH, J., concurring.

Men joining clubs, churches, brotherhoods, or exchanges understand that expulsion *ipso facto* extinguishes all rights. Why should it not? The association having performed the contract upon its part, upon what theory of the law can the member who may have, as in this case, violated the very purpose and spirit of the organization—honesty and fair dealing—recover back the consideration paid or damages? This is not forfeiture. What did he get and lose? The personal privilege of membership—a right or estate which *ab initio,* in its nature, and by the contract is limited and determined by his status as a member. The forfeiture which equity is said to abhor is the cutting off of an estate—depriving the person of something which is to vest in the injured person as a recompense. The member's interest could be likened to the license or estate which a farmer has who is permitted by his neighbor to use his private roadway so long as he will keep the gate shut and in repair. He can have no property right in the association, separate and distinct from membership. If he could, then he could sell it and retain the membership, which is absurd. In this respect it is like the interest of a partner in a firm, inseparable and untransferable except by consent of all the partners.

The association's right to expel a member for good cause and the consequent extinguishment of all his rights is primary and fundamental. If not expressed, it exists by implication, and is limited only as the rules of the association may limit it. And herein lies what room there is for controversy in the instant case. Rules which would permit the expelled member to sell the vacant seat, or to receive the proceeds of a sale, would create by contract a right incidental to membership which could be enforced. No property right, separate and distinct from membership, would arise. It would be rather a condition of the expulsion of a member. Such a provision would be a rare thing, unless made only for the benefit of creditors. There is, however, a provision that members in good standing may transfer their certificates, subject to the right of the association to refuse membership to the transferee, either because he is not a suitable person or because the membership has been in some "way impaired or forfeited." This provision is equitable and is made for those members who must move away or quit the association. It does not change the nature of a member's interest. It is a right granted to and incidental to membership as such. Being a privilege granted only to members in good standing, it never arises in favor of an expelled member, and he can base no claim upon it. Such power to transfer will not give a member to understand that he is the unconditional owner of a privilege of membership with power to transfer. It is conditioned, and the condition has not been complied with. It seems to me it never would or could give to the certificate a value on the market distinct from and independent of the qualification and right of its owner to a seat on the stock exchange, and that, in view of the terms of the contract, there is no escape from the conclusion that expulsion meant the loss of all rights acquired by virtue of the certificate. That such is the meaning of the contract appears, not only from this provision, but from the provisions of the contract providing for expulsion for fraud and the provision for reinstatement of an expelled mem-

ber only "upon payment of the regular initiation fee and annual assessment."

This holding seems to be in line with the decided cases. In the case entitled *In re Gaylord*, 111 Fed. 717, relied upon by plaintiff, and the only case, I believe, cited by plaintiff where were involved the rights of an expelled member, the plaintiff represented creditors of the member as trustee in bankruptcy. The dispute arose over the proceeds of the sale of the member's seat provided for by the rules. The rules provided that in the case of a suspended member or an expelled member the seat should be sold. In the case of the suspended member it provided that the proceeds should go to the member's creditors. Not to make the same application in the case of an expelled member would defeat the general purpose of the rules to protect the creditors. In the absence of explicit directions as to the application of the proceeds of the sale of an expelled member's seat, it was held that the rules as a whole intended that the proceeds should be applied in the same way, and any balance after payment of creditors should go to the member. The rules in question have no such provision.

So long as the association is not diverted from its purpose and does nothing against public policy, of course the contract controls and no estoppel arises.

SEDGWICK, J., dissenting.

1. Three questions are presented by this record and discussed in the briefs: (1) Did the paper writing known as the certificate of membership have an intrinsic market value distinct from and independent of the qualification and right of its owner to a seat upon the stock exchange? This is the fundamental question in the case and is the basis for all reasoning upon the two remaining questions. If the certificate had no distinct value but was of no value except to one who had a right to a seat upon the exchange, and was so involved in that right to such seat that it could not exist independently of the active participation of the owner of the certificate in the business of

the exchange, the plaintiff, of course, could not maintain this action if he was lawfully expelled from the exchange, and the judgment of the district court would necessarily be reversed.   (2) If it should be found that this certificate has an intrinsic value independent of a seat upon the exchange, so that it constitutes an item of property that may be and habitually is transferred to and from those who have no seat upon the exchange and do not expect to have, and has a definite market value in such exchanges, then the second question is: Do the articles and rules of the association contemplate and authorize the forfeiture of this property upon the expulsion of its owner from a seat upon the exchange?   (3)  If it should be found that the owner of such certificate has a property interest in it distinct from his right to a seat upon the exchange, and that the articles and rules do not authorize the forfeiture of such property upon the expulsion of a member from his seat on the exchange, the third question would be whether the action of the association amounted to a conversion of this property.

Upon the first question the evidence appears to me to be clear and conclusive that the certificates sold by this association for $3,000 have a distinct value independent of the participation of their owners in the business of the exchange.   The evidence is without contradiction that these certificates are and have been continually bought and sold by parties not connected with the exchange, and that they had a well-defined and generally recognized market value.   The owner of such a certificate, whether or not he intends to apply for a seat upon the exchange, may deposit such certificate as collateral security for a loan at the banks of Omaha, and the banks generally receive them as such security.   The defendant in this case has furnished evidence that it was understood by the directors of this association that this was the case, and that this certificate might be sold upon the markets in Omaha in the same manner that negotiable notes are sold, unless some action was taken by the association to prevent it.   The defendant caused a public

notice to be published in the official paper of the exchange, which had an extensive circulation, that this plaintiff's certificate (describing it) "is wholly without value and the public are hereby warned against purchasing the same," which was an unequivocal admission and declaration that the practice of treating these certificates as articles of barter and sale by the public was known to the officers of the association, and that some affirmative action was necessary to destroy its market value. Indeed, it does not appear to be seriously questioned in the evidence, or contended in the briefs, that these certificates were not freely bought and sold by the public generally without regard to the right to a seat upon the exchange. This fact furnished an inducement to purchase these certificates from the defendant, and so enable the defendant to realize more from the sale of these certificates than in all probability it would otherwise have been able to do.

2. As these certificates had an independent value of their own upon the markets in Omaha, in determining whether the articles and by-laws authorized a forfeiture of this property upon the expulsion of a member from a seat upon the exchange, we must of course be governed by the universal rule that the law does not favor forfeitures, and that the right to declare a forfeiture must be clearly expressed and cannot be derived from inference or analogy. There is no express provision in the articles and rules of the association for forfeiting this property upon the expulsion of a member from a seat upon the exchange. The majority opinion derives this power by inference. It says: "Can any reasonable inference be drawn therefrom (sections 7 and 10 of rule 11) other than that expulsion of a member for bad faith and dishonest conduct means the utter annulment of the certificate and every privilege that pertained thereto before expulsion?" The following is quoted from rule 11 as compelling such an inference: "An expelled member shall not be readmitted to membership except upon payment of the regular initiation fee and annual assessment."

That "initiation fee and annual assessment" includes the original cost of the certificate of $3,000 may be a legitimate inference, but it is no stronger than contrary inferences that may be drawn from other language of the articles and rules. Again, in section 5 of rule 9, which is referred to in the opinion as strengthening the inference that the "initiation fee" mentioned in rule 11 should be construed to mean the original cost of the certificate, the words "initiation fee" are not used, but the "certificate of membership therein" is specified. It seems to be inferred that "initiation fee" means $3,000, the original purchase price of the certificate, and that, while in other rules the certificate is specifically named as such, in this rule it is to be inferred. In an opinion in the briefs, said to have been the opinion of the trial judge, it is said that the expulsion itself was unlawful. I do not find it necessary to examine that proposition. It is enough to know that this court in its opinion has found that "a certificate of membership in an exchange is a species of property," and that property cannot be forfeited by inference or implication, but authority to forfeit must be conferred in express words. The defendant took active and effectual measures to destroy the value of this certificate, which in law is a conversion.

I think the judgment of the district court is right and should be affirmed.

MORRISSEY, C. J., concurs in this dissent.