# Richmond

## Alex Gottlieb, Et Al. v. Economy Stores, Incorporated.

March 10, 1958.

Record No. 4762.

The opinion states the case.

*H. Lee Kanter* (*Morris B. Gutterman; Kanter & Kanter*, on brief), for the appellants.

*Joseph E. Baker* (*M. R. Broudy; Broudy & Broudy*, on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Alex Gottlieb and Suburban Foods, Incorporated, trading as Savemore Super Market, instituted this proceeding against Economy Stores, Incorporated, by filing a bill praying for an injunction prohibiting the defendant from denying to complainants the rights and privileges of memberships in Economy Stores, Incorporated.

Economy Stores, Incorporated, will be hereinafter called Economy and Alex Gottlieb and Suburban Foods, Incorporated, called appellants, or referred to, respectively, by name.

After an *ex parte* hearing, the court entered a decree for a temporary injunction. Economy answered the bill admitting that Gottlieb had been a member of the corporation but denying that Suburban Foods, Incorporated, had ever been a member. It also denied that

Gottlieb's expulsion was without due cause, and moved the court to dissolve the temporary injunction.

The chancellor directed Economy to produce copies of its by-laws, rules and regulations and all pertinent minutes of the meetings of its Board of Directors. Economy produced the papers required and, at the same time, withdrew its motion to dissolve the temporary injunction. By leave of court, Economy filed an amended answer on November 13, 1956, reiterating the denials of its former answer, and further alleging that its Board of Directors had rescinded its action of May 15, 1956, whereby Gottlieb was expelled from membership, had restored him to membership on September 11, 1956, and at a subsequent regular meeting on September 26, 1956, had, after a full hearing, expelled him from membership for due cause.

On December 13, 1956, appellants, by leave of court, filed an amended bill, in which it was alleged that the expulsion of Gottlieb was improper and illegal because of inadmissible and insufficient evidence, and in bad faith. Economy answered the amended bill denying the additional allegations and again reiterated the denials of the former answers. A copy of the minutes of the meeting of the Board of Directors of Economy on September 26, 1956, was attached as an exhibit.

The cause came on to be heard *ore tenus* on November 16, 1956, and for reasons set forth in a written opinion, the able and learned chancellor of the trial court entered a decree on December 26, 1956, denying the injunction prayed for and dismissing the amended bill of appellants. From that decree appellants applied for and obtained this appeal.

Economy is a non-stock, non-profit Virginia corporation, organized in August, 1938. Its membership is composed of one hundred and twenty-two retail grocery dealers operating as individuals, partnerships, or corporations. Its primary purpose is to aid its members by purchasing merchandise, commonly sold in their stores, at reduced prices in large volume and reselling same to its members at a lower price than such merchandise could be bought by members acting individually, and by assisting its members generally in the promotion of their business. If there are any funds remaining at the end of its fiscal year, Economy treats such funds as an overcharge and pays it out to its members on the basis of their respective purchases from Economy. The members realize a saving of approximately 8% of the cost on all items purchased through such cooperation.

The charter of Economy contains no provision for the expulsion

of a member. Section 1 of Article II of its By-Laws provides that:

"Any person or firm of financial responsibility and good moral character engaged in the retail grocery business may become a member of the corporation by a majority vote of the Board of directors or members, and may remain a member only while in such business."

Section 1 of Article III provides that:

"Any member who the Board of Directors think is not desirable may be expelled from the Corporation by a majority vote of the directors. Also any member may resign at any time."

Suburban Foods, Incorporated, was granted a charter by the Virginia State Corporation Commission on November 16, 1953. It is engaged in operating supermarkets, trading as Savemore, in the City of Norfolk, Virginia, and vicinity, having begun April, 1954, by opening a supermarket on Taussig Boulevard, in the City of Norfolk.

Alex Gottlieb is president, treasurer, and sole stockholder of Suburban Foods, Incorporated. On December 8, 1953, Gottlieb was admitted to membership in Economy, and paid a membership fee of $1,650. His membership covered a store located on Taussig Boulevard, Norfolk, operated as the Savemore, a supermarket, until May 1, 1956.

On May 1, 1956, the above store was sold by Gottlieb to T. H. Orleans and William Goldsticker, who were to continue the operation as the H. & W. Corporation. It was agreed that the purchasers were to be permitted to use the trade name under which Gottlieb operated for a period of thirty days thereafter. However, when the purchasers attempted to use that trade name, Gottlieb instituted a suit to restrain such use.

On December 13, 1955, when Gottlieb was negotiating for the opening of a store on Military Highway, Norfolk, he applied for a distinct and separate membership in Economy, for that location. He was accepted and became a member at the new location on that date.

On May 15, 1956, the Board of Directors of Economy, at a regular meeting, adopted a motion to notify Gottlieb that his application for membership at the new location on Military Highway had been reviewed and rejected by the Board. Economy refused to deal with him as a member or to sell him goods, and thereupon Gottlieb instituted this proceeding.

On September 11, 1956, during the pendency of this proceeding

in the trial court, the Board of Directors of Economy adopted a resolution reciting that whereas, it had been advised that its action of May 15, 1956, rejecting the application of Gottlieb for membership was of doubtful validity, and should be rescinded, it had, therefore, rescinded such action and restored Gottlieb to membership. It appeared that the minutes of the meeting of May 15, 1956, failed to show that any notice was given Gottlieb of the contemplated action of the Board at the meeting, and that no reason was stated for the action taken.

On September 13, 1956, Gottlieb was given written notice that certain complaints had been made against him in connection with his membership, and that on September 26, 1956, in the Directors' Room of Economy a meeting would be held for the purpose of hearing charges that his membership in Economy was no longer desirable in that:

"(1) Contrary to your express agreement, you did open your store located on Taussig Boulevard, on December 26, 1955, causing much embarrassment to and loss of good-will heretofore established by Economy Stores, Incorporated.

"(2) Events surrounding the sale of your business located in the 100 block of Taussig Boulevard, in that:

"(a) After orally agreeing to permit the purchasers thereof to use the name of "Savemore" for a period of thirty (30) days, contrary to said oral agreement, you brought a suit to enjoin said use before said period had expired, causing much embarrassment and expense to said purchasers, who were fellow members of Economy Stores, Incorporated.

"(b) You removed, or attempted to remove, a number of articles which should have been included in the transfer of said business to the purchasers.

"(3) Misleading advertising relative to Green Stamps on August 30, 1956 and August 31, 1956."

Gottlieb and his attorney attended the hearing on September 26, 1956, and were allowed to freely and fully take part therein. Twelve directors constituted the trial panel. A transcript of the proceedings and the evidence taken was presented before the trial court. It showed that Gottlieb and the other members of Economy had agreed that they would not open their stores on Christmas day, 1955, and the day following. A number of independent corporations and retail dealers operating grocery stores in the same community agreed with Economy and its members that, in consideration of mem-

bers of Economy not opening for business on the above two days, they would also keep their stores closed. Notwithstanding his agreement, Gottlieb's store was open for business on December 26, 1955, from 3:30 p.m. to 7:30 p.m. The manager of Economy wrote to Gottlieb and complained of the violation of his agreement. Gottlieb, when first confronted with the complaint, neither denied the accusation nor made any explanation thereof. Later he promised he would answer the letter from Economy's manager, but failed to do so. Gottlieb testified before the Board of Directors and the trial court that the store was open against his express orders. He undertook to minimize the violation by saying that there were only a few sales of milk and soft drinks to customers in need of such supplies. It appeared, however, that there were present in the store between 3:30 p.m. and 7:30 p.m., on December 26, about seven employees of Gottlieb and forty or fifty customers making purchases of merchandise.

The evidence as to Charge (3) showed that Economy held an exclusive franchise from Sperry & Hutchinson Company for the use of its "S. & H. Green Stamps," widely known trading stamps. Gottlieb, who had the right within fifteen days after he became a member of Economy to apply for the use of "S. & H. Green Stamps," declined to avail himself of that right within that time. When asked by Economy whether he wanted to use those stamps in his business, he replied in the negative. However, in August, 1956, without notice to Economy, he arranged to give "Consumer Green Stamps" with purchases from his store. This type of stamp cost him about half the amount of S. & H. stamps. He then advertised in local newspapers, in large type, that he would give "Double Green Stamps During Grand Opening" of his new store on Military Highway, and that there was a "Stamp Redemption Center in Store." He did not give the name or title of the "Green Stamps" offered.

Economy contended that the advertisement misled purchasers into believing that by dealing with Gottlieb they would receive the better known "S. & H. Green Stamps" in twice the amount obtainable elsewhere for the same purchase, and that they could redeem such stamps at any redemption center. The redemption center of the Sperry and Hutchinson Company for "S. & H. Green Stamps" was located in a different part of the city.

Frank L. Fentress, a director of Economy and a member of its trial panel, stated that a woman had shown him a stamp book containing "$60.00 worth of Consumer Green Stamps," and informed him

that she had been told that she could redeem them at the S. & H. Redemption Store; but that she had been unable to do so. He added: "Whether Mr. Gottlieb is the one that is doing that, it is misleading. It confuses the customer."

Counsel for Gottlieb conceded that the advertisements of his client as to "Green Stamps," without further reference to their character or name, were susceptible of double interpretation and misleading, and that Gottlieb would thereafter discontinue such confusing advertisements.

Suburban Foods, Incorporated, has never made any application to Economy for membership, has never paid any membership fee, has never been elected to membership, and has never been expelled from membership. Since the date of the incorporation of Suburban Foods, Incorporated, Gottlieb has on three separate occasions applied for single memberships, and in each application Gottlieb was named as the prospective member.

It appeared there was a conflict of understanding with respect to the matters involved in Charge (2) (b). We will not undertake to set out the evidence with respect thereto; nor will we recite the evidence with respect to Charge (2) (a), in view of the finding of the chancellor of the trial court.

Upon consideration of the statements of the several witnesses and after the argument of counsel, the directors found Gottlieb guilty on three of the offenses charged, that is, on Charge (1), Charge (2) (a), and Charge (3). A resolution was then adopted by a vote of eleven to one expelling Gottlieb from membership in Economy, pursuant to Section 1, Article III of the By-Laws of that corporation. Upon notification of that action, Gottlieb was tendered a return of the fee paid by him for membership, which he refused to accept.

The evidence of witnesses before the trial court was to the same effect as that heard before the Board of Directors at its September 26, 1956, hearing. After a consideration of all the evidence, including the transcript of the testimony and proceedings before the Board of Directors, the chancellor was of opinion that it was sufficient to support the finding of the Board of Directors that Gottlieb was guilty of the offenses contained in Charges (1) and (3); but that it was not sufficient to justify a finding of guilty as to Charge (2) (a), because the offense therein charged was not one respecting the capacity of Gottlieb as a retail grocery dealer.

Appellants contend that the chancellor erred in failing to hold:

(1) That Alex Gottlieb and Suburban Foods, Incorporated, had separate and distinct memberships in Economy Stores, Incorporated, and that the action against Gottlieb was ineffective against Suburban Foods, Incorporated;

(2) That Section 1 of Article III of the By-Laws of Economy providing for the explusion of a member is invalid, in that the corporation had no authority to delegate to its Board of Directors the power to expel, and that the by-law was too vague and uncertain to furnish a punitive standard;

(3) That the evidence was not sufficient to warrant the expulsion of Gottlieb; and

(4) That Gottlieb's expulsion was void because the proceedings of the Board of Directors of Economy were irregular and not in good faith.

In addition, Gottlieb contends, for the first time on appeal, that the proceedings at the hearing before the Board of Directors were void because Frank L. Fentress, a member of the Board of Directors, acted both as an accuser and trier of the accused.

The evidence clearly shows that Suburban Foods, Incorporated, was not a member of Economy, and had no rights in such membership. Its corporate name was only used for the purposes and benefit of its sole owner, Gottlieb, as the instrument through which he conducted his business. It was, therefore, merely the *alter ego* of Gottlieb.

The record shows that Fentress inquired of Gottlieb's counsel whether he thought it was unethical for one to make a misleading statement to a customer with regard to green stamps. Counsel agreed that such statements were improper. Then Fentress stated what he had been told by a woman, and, at the same time, explained that he did not know whether Gottlieb was the grocer who was doing that or not. The charge against Gottlieb was that he published "Misleading advertising relative to Green Stamps." Fentress did not testify as to this charge. The newspaper advertisements of August 30 and 31, 1956, in evidence, supported that charge.

Gottlieb did object at the hearing before the Board of Directors that the statements of the witness, Fentress, as to what was told him by a woman who held "Consumer Green Stamps," was hearsay evidence and inadmissible; but he then made no objection to Fentress acting as a member of the trial panel.

The authorities on the subject unite in saying that corporations such as the one here involved have an inherent power to disfranchise

their members for any one of three causes, namely, offenses of an infamous character indictable at common law; offenses against the member's duty as a corporator; and offenses compounded of the two. *Allen* v. *Chicago Undertakers' Association*, 232 Ill. 458, 83 N. E. 952; *Dickenson* v. *The Chamber of Commerce of Milwaukee*, 29 Wis. 45, 9 Am. Rep. 544; Fletcher Cyc., Corporations, Permanent Edition, Volume 12A, sections 5696 and 5697; 4 Am. Jur., Associations and Clubs, § 23, page 470; 7 C. J. S., Associations, § 25 c, page 59.

In *Bradley* v. *Wilson*, 138 Va. 605, 123 S. E. 273, we upheld the right of an unincorporated association to expel a member for failing to comply with a provision of its constitution that membership might be terminated by a member: "Failing or refusing to comply with any lawful requirement of * * * the league." Quoting from *Kalbitzer* v. *Goodhue*, 52 W. Va. 435, 44 S. E. 264, we approved the following statement: " 'The constitution and by-laws adopted by a voluntary association constitutes a contract between the members, which, if not immoral or contrary to public policy, or the law, will be enforced by the courts.' " 138 Va., *supra*, page 612.

Economy was organized to assist retail grocers of responsibility and good moral character in the conduct of their business. Section 1 of Article III of its By-Laws obviously required that its members should conform to the policies established by the corporation, and have the confidence of its members and Board of Directors, under penalty of expulsion for conduct to the contrary. While the power to expel a member is primarily in the whole body of members constituting or representing the corporation, the better view is that such power may be exercised by its directors, trustees, or other officers, by a duly adopted by-law or resolution not contrary to its charter or the law. Fletcher Cyc., Corporations, Volume 12A, *supra*, § 5702, page 628, *et seq.*

The power of a corporation such as Economy to relieve itself of members transgressing fair and ethical principles of trade, or violating the fundamental objects and purposes of the corporation, is essential to its successful preservation. 4 Am. Jur., Association and Clubs, § 22, page 469. Unfair and improper practices of a member in dealing with his fellow members or with the public naturally cause him to become undesirable to associates who pursue an ethical course. Within the limitation that they shall not be in conflict with the laws of this State or the United States, a corporation may adopt any reason-

able by-laws for the purpose of enabling it to carry out the purposes and objects of its organization.

The by-law under review is broad and comprehensive. While it does not provide for notice and hearing, the failure of such provision is not a proper ground for objection here, since Gottlieb was given written notice of the time and place of the hearing and the specific charges against him. He appeared in person and by counsel with a number of witnesses. He was allowed to testify and to call and examine witnesses. He admitted that his store had been open for business on December 26, 1955, and explained the circumstances. The charge of misleading advertisements was proven by presenting the advertisements in evidence. The charges were fully heard; argument of counsel was allowed; and a decision reached by a trial body composed of businessmen engaged in the same line of business as Gottlieb.

By-laws of a similar nature, authorized expressly or impliedly by statute, or by charter of the corporation or association, have been sustained in a number of cases. In *People ex rel. Johnson* v. *N. Y. Produce Exchange*, 149 N. Y. 401, 44 N. E. 84, the court upheld a by-law, authorized by New York statute, which provided for expulsion for "any proceeding inconsistent with just and equitable principles of trade." In *Josich* v. *Austrian Benevolent Society*, 119 Cal. 74, 51 P. 18, the court approved a rule of the Society for expulsion "If any member shall be guilty of improper conduct." In *Stevenson* v. *Holstein-Friesian Association* (C. C. A. 2d) 30 F. 2d 625, a by-law, authorized by New York statute, providing for expulsion by a board of directors when a member should "so conduct himself as to make his association undesirable," was upheld. We think the same rule applies and should apply where the power of expulsion has been effectively delegated by the members of a corporation or association to its board of directors.

It is generally held that the power of courts in reviewing the internal management or policies of corporations is limited in scope, and confined to cases of fraud, bad faith, breach of trust, gross mismanagement, or *ultra vires* acts. In reviewing an action expelling a member of a corporation, they may inquire whether the member was given reasonable notice of the hearing of the charge against him, whether he was afforded an opportunity to be heard, and whether the hearing and expulsion were in good faith. In cases where the evidence is conflicting, the action of the corporation is conclusive, if it is in accordance with the law and the powers conferred

upon the corporation. When there is evidence tending to support the conclusion, the courts will not interfere with the merits of the decision. Fletcher Cyc., Corporations, Volume 12A, § 5704, page 643, *et seq.*; 19 C. J. S., Corporations, § 984, page 447.

In *People ex rel. Johnson* v. *N. Y. Produce Exchange, supra,* 44 N. E. at page 87, this is said:

"The question for the court is not whether, passing upon the evidence as *res nova*, it would have reached the same conclusion as that of the board of managers, or whether the conclusion was reasonable or unreasonable, but simply and wholly whether the case was so bare of evidence to sustain the decision that no honest mind could reach the conclusion that the realtor's conduct was 'inconsistent with just and equitable principles of trade.' "

Also the following clear statement is made in *Stevenson* v. *Holstein-Friesian Association, supra,* 30 F. 2d 627:

"Where an association sets up a private tribunal to determine whether a member has forfeited his rights of membership by the violation of some rule of the corporation, judicial review is of limited scope. In general, it may be said that courts will interfere to keep such a tribunal within its jurisdiction, as prescribed by the rules of the association, and will inquire whether the action taken was in bad faith, or in violation of the laws of the land, but will not investigate the merits of the tribunal's decision."

It is true that the hearing before the Board of Directors of Economy was not conducted according to the strict rules of procedure in judicial proceedings. The hearing was had by merchants and businessmen, who are not acquainted with such strict rules; but who know, as honorable businessmen, what constitutes fair and ethical practice and principles. To require technical precision in hearing complaints of the character here by retail grocers would embarrass and often defeat their disciplinary powers. Such proceedings are necessarily somewhat summary, and when essential rights are preserved, mere informality ought not to render the proceedings void. *People ex rel. Johnson* v. *N. Y. Produce Exchange, supra;* 7 C. J. S., Asociations, § 25 d, pages 61 *et seq.*

The directors of a voluntary association are not deprived of jurisdiction to try a member for offenses against the rules of his corporation merely because the charges are preferred by one of their number. 4 Am. Jur., Associations and Clubs, § 22, page 469; *Green* v. *Board of Trade,* 174 Ill. 585, 51 N. E. 599, 49 L. R. A. 365. It is sufficient if the procedure adopted and followed is fair

and reasonable, and made for justice rather than form. *O'Brien* v. *South Omaha Live Stock Exchange*, 101 Neb. 729, 164 N. W. 724, 726; *Gervasi* v. *Societa Giusippi Garibaldi*, 96 Conn. 50, 112 A. 693, 696; *McConville* v. *Milk Wagon Drivers' Union*, 106 Cal. App. 696, 289 P. 852, 854.

Gottlieb further insists that since he had a property right in Economy, the corporation could not delegate the power of expulsion to the Board of Directors, in the absence of statute or charter provision. We find no merit in this contention. His property right in Economy was merely incidental to his membership, and ceased when he was expelled as a member for misconduct. *Lawson* v. *Hewell, et al.*, 118 Cal. 613, 50 P. 763, 49 L. R. A. 400; *Schroeder, et al.* v. *Meridian Improvement Club*, 36 Wash. 2d 925, 221 P. 2d 544; *Elfer* v. *Marine Engineers Benefit Association No. 12, et al.*, 179 La. 383, 154 So. 32; 4 Am. Jur., Associations and Clubs, § 22, page 469.

We are of opinion that Section 1 of Article III of the By-Laws, as administered, was sufficiently definite and specific. It states the cause of expulsion with a reasonable degree of certainty, and Gottlieb knew the standard of conduct to which he should conform. We find no evidence tending to show bad faith, either in the making of the charges against him or in the hearing afforded him. Upon consideration of all the facts and circumstances in evidence, we are of opinion that they were sufficient to justify the finding of the Board of Directors that he violated his duty and obligation as a member of Economy.

For the reasons stated, the decree of the trial court is affirmed.

*Affirmed.*