# CIRCUIT COURT OF LOUDOUN COUNTY

Patsy A. Cornwell

v. .

Main Street Village
Homeowners Association, Inc.

January 16, 1997

Case No. (Chancery) 17227

BY JUDGE JAMES H. CHAMBLIN

This declaratory judgment proceeding concerning the Parking Policy of Main Street Village, a subdivision in the Town of Purcellville, Loudoun County, Virginia, was tried on December 20, 1996.

For reasons that follow, the Court finds that the Parking Policy concerning parking on the common areas of Main Street Village as adopted by the Board of Directors of the Main Street Village Homeowners Association, Inc., in July 1996, is invalid and unenforceable because it does not meet the requirements of the Declaration of Covenants, Conditions, and Restrictions for Main Street Village and the Bylaws of the Association.

## Factual Background

At trial, the parties filed a Joint Stipulation of Facts, and each party presented additional evidence. Only facts either stipulated or found based on the evidence relevant to the decision herein are mentioned in this opinion.

Main Street Village is a residential community which is currently comprised of 120 townhouses, of which 56 have garages. The Complainant, Patsy A. Cornwell, is the owner of the townhome on Lot 3 (104 Hackley

Court) with a garage and a driveway located on her lot, and not on the Common Area.

In July 1996, the Board adopted Policy Resolution 96-1 concerning parking on the Common Area. Pursuant to the Policy, the Board has designated and numbered parking spaces on the Common Area. The Board has delayed enforcement of the Parking Policy because of this litigation.

The pertinent portions of the relevant documents are listed below.

## *The Declaration*

### Article I. *Definitions*

*Section 2.* "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of a fee simple title to any Lot which is a part of the Property, including contract sellers, but excluding those having such interest merely as security for the performance of an obligation ....

*Section 4.* "Common Area" shall mean all real property owned or to be owned by the Association for the common use and enjoyment of the Owners ....

### Article II. *Property Rights*

*Section 1. Owner's Easements of Enjoyment.* Every Owner shall have a right and easement of enjoyment in and to the Common Area, which shall be appurtenant to and shall pass with the title to every Lot, subject to the following provisions ....

(c) The right of the Association to establish uniform rules and regulations pertaining to the use of the Common Area and the facilities thereon ....

(f) The right of the Association to regulate parking on the Common Area through the granting of easements or promulgation of rules and regulations ....

*Section 3. Parking Rights.* The Association shall have the right to permanently assign one (1) vehicular parking space for each Unit, should it so elect ....

### Article VI. *Use Restrictions*

*Section 6.* No motorized vehicle may be used or maintained on the yards or sidewalks of any Lot, and no unlicensed vehicles are allowed on the Property. The Board of Directors shall have the right to tow any

vehicle(s), the keeping or parking of which in the Common Area violates this Declaration upon forty-eight (48) hours notice.

## The Bylaws

Article VII. *Powers and Duties of the Board of Directors*
  *Section 1. Powers.* The Board of Directors shall have the power to:
    (a) adopt and publish rules and regulations governing the use of the Common Area and facilities, and the personal conduct of the members and their guests thereon, and to establish penalties for the infraction thereof ....
  *Section 2. Duties.* It shall be the duty of the Board of Directors to
....
    (h) otherwise perform or cause to be performed the functions and obligations of the Board and the Association as provided for in the Declaration and the Articles of Incorporation and these Bylaws.

## The Parking Policy

I. *General Provisions*
  C. Owners will be allocated two (2) reserved parking spaces. The reserved spaces for each garage townhouse are the garage and the driveway, consistent with parking tabulation methodology utilized by Loudoun County in the plan review and approval process. All non-garage owners will be allocated two (2) parking tags which should be displayed on the rear view mirror.
  D. Remaining parking spaces are allocated as follows: The remaining spaces will be utilized on a first come/first served space available basis for the residents of the community. Owners are not permitted to use a visitor tag for parking their own car in "Visitor" designated parking spaces.

*Enforcement*
  A. The Association will contract with a towing company to police the property on a periodic basis. This company will have the authority to remove vehicles which are illegally parked or in violation of this resolution.
  B. Unauthorized vehicles parked in reserved spaces can be removed by contacting the towing company. All expenses for

retrieving the vehicle will be the responsibility of the owner of the car parked in violation of this Resolution.

Pursuant to the Parking Policy, the Association assigned two parking spaces in the Common Area for each lot without a garage. Each such space is marked "Reserved" and numbered. The remaining spaces are marked for "Visitor" parking. The driveway and garage were assigned as the parking spaces for a lot, such as the one owned by Ms. Cornwell, with a driveway and a garage. Under the Parking Policy, she is prevented from parking in the Common Area.

The Association presented considerable evidence of the process followed by the Board when it adopted the Parking Policy.

The evidence showed that there is no lack of sufficient parking spaces. Ms. Cornwell testified that she counted an average of fifty-nine vacant spaces each night since November 1995. The problem is one of convenience for each townhome owner who wants to park in front of his or her property.

*Legal Analysis*

The Complainant argues that, whether or not there is a parking problem, the Association must comply with the Declaration and the Bylaws in adopting any parking policy for the Common Area. On the other hand, the Association argues that all it must do is act reasonably in establishing parking regulations. Both are correct, but the initial inquiry must be whether the Association acted within the scope of its authority under the Declaration and the Bylaws. Reasonableness does not become an issue until it is determined that the Association did not violate the Declaration and the Bylaws.

As I ruled at trial, the Association did not permanently assign any parking spaces. Therefore, the provisions of Article II, Section 3, of the Declaration concerning a permanent assignment of one parking space per Unit does not apply. At most, the Parking Policy is a parking rule or regulation which the association may promulgate under Article II, Section 2(f), of the Declaration and Article VII, Section 1(a), of the Bylaws.

The Association's rules and regulations pertaining to the use, including parking, of the Common Area must be uniform under Article II, Section 1(c), of the Declaration. As "uniform" is not defined in the Declaration, its meaning must be the general meaning. Any dictionary will define "uniform" in such terms as "not varying in form, rate, or degree" or "like others in the same class."

Under the Declaration, there is only one class of owners. *See* Article I, Section 2, of the Declaration. The Common Area is property owned for the

common use and enjoyment of the Owners. *See* Article I, Section 3. Therefore, each owner shall have the right to use the Common Area for the same purpose as all the other owners. After all, each owner pays the same monthly assessment, part of which goes toward the maintenance of the Common Area, including the parking areas.

The Parking Policy completely denies an owner with a driveway and garage the right to park on the Common Area. This right is granted to the non-garage owners. Yet the Declaration provides for the "common use and enjoyment" of the Common Area by all the owners. A garage owner, as Ms. Cornwell, pays the same monthly assessment as a non-garage owner, but the garage owner does not get the same benefit as to parking in the Common Area as the non-garage owner. As such, the Parking Policy which denies a garage owner the right to park in the Common Area is not only a denial of the garage owner's right to use the Common Area for parking but also is not uniform as required by the Declaration.

The Association argues that it followed a lengthy process giving all the lot owners a chance to be heard before the Parking Policy was adopted. It feels that because it owns the Common Area, it has the authority to allow lot owners to use the Common Area subject to reasonable rules and regulations. It argues that it has the same power as the local governmental body because it provides what a local government provides; however, it offered no authority for this position. It cites Va. Code § 55-513(A) as authority to adopt such rules and regulations. And finally, it argues that its action must be sustained under the "business judgment rule."

I disagree with all of the Association's arguments.

However well-intentioned, *bona fide,* or reasonable the process may have been in adopting the Parking Policy, it cannot be sustained if it violates the Declaration. Va. Code § 55-513(A) gives the Association the power to establish rules and regulations "except where expressly reserved by the declaration to the members." Such is the case here. The members (lot owners) have reserved to all of them a common use and enjoyment of the Common Area and a right that all rules and regulations be uniform.

Assuming that the "business judgment rule" applies, the action of the Association must be in accordance with its powers. *See Gottlieb v. Economy Stores,* 199 Va. 848, 857 (1958). As stated above, the association exceeded its authority under the Declaration and the Bylaws in completely denying garage owners the right to park in the Common Area. Therefore, a good faith judgment of the best interests of the Association as provided in the "business judgment rule" has no application to the validity of the policy.

This decision is based upon the rights granted to the lot owners under the Declaration and the Bylaws. It is irrelevant that the Association may feel that a garage owner has equal and adequate parking in the driveway and garage because a garage owner by virtue of owning the lot has the driveway and garage. No other owner or the Association has any right in the driveway and garage. The Association has no right to assign parking spaces on property not owned by it. For similar reasons, it is irrelevant that the driveways and garages help the subdivision meet the number of parking spaces required by the town ordinance.

As a further consideration, the Enforcement portion of the Parking Policy also violates the forty-eight hour notice before towing requirement of Article VI, Section 6, of the Declaration.

The Association has not prevailed. Therefore, it is not entitled to any attorney's fees.

## *Order of the Court*

The Parking Policy is declared invalid and unenforceable because it denies the Complainant the right to use the Common Area for parking on the same uniform basis as the other lot owners and because it violates the forty-eight hour notice before towing requirement. The Association is enjoined from enforcing the Parking Policy as adopted, and it is required to remove the markings placed on the parking spaces in the Common Area pursuant to the policy. The Association is not awarded any attorney's fees.