Joseph Lee GIBSON, Plaintiff,

v.

**BOY SCOUTS OF AMERICA,**
et al., Defendants.

No. CIV.A. 04–1040.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 11, 2005.

Raymond Donald Battocchi, Gabeler Battocchi Griggs & Powell PLLC, Joseph Lee Gibson, P. David Richardson, McLean, VA, for Plaintiff.

John David McGavin, Trichilo Bancroft McGavin Horvath & Judkins PC, Fairfax, VA, for Defendants.

## MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Plaintiff Joseph Lee Gibson's ("Mr. Gibson," "Plaintiff") Motion for Partial Summary Judgment. This case concerns the revocation of Mr. Gibson's membership in the Boy Scouts of America by Defendants National Capital Area Council ("NCAC") and Boy Scouts of America ("BSA") (collectively, "Defendants"), depriving him of his position as Scoutmaster for Troop 869, without notice that his membership was under consideration for revocation or of the basis for the revocation, or opportunity to reply to charges against him. The questions before the Court are whether there is any genuine dispute of material fact for trial and whether Mr. Gibson is entitled to judgment as a matter of law with respect to (1) his fair procedure claim when Defendants did not notify him that his membership status was under review, did not inform him of the charges against him, and did not give him the opportunity to respond to charges against him and (2) his *ultra vires* claim when Defendants revoked his membership from the Boy Scouts of America rendering him ineligible to be Scoutmaster of Troop 869. The Court grants Mr. Gibson's motion for summary judgment as to the first count because it holds that no genuine dispute of material fact exists that Mr. Gibson's common law rights to fair procedure were violated and he is entitled to judgment as a matter of law. The Court denies Mr. Gibson's motion as to the *ultra vires* claim because even if Defendants revoked Mr. Gibson's membership on the basis of his actions as Scoutmaster, Defendants did not act beyond the scope of their own authority as delineated by their bylaws.

## I. BACKGROUND

Mr. Joseph Gibson became Scoutmaster for Troop 869, sponsored by Trinity United Methodist Church ("the Church"), in 1998. The Boy Scouts revoked Mr. Gibson's Boy Scout membership on February 3, 2003 without any notice to Mr. Gibson that the Boy Scouts had any reasons to consider revoking his membership.

Mr. Gibson had extensive experience with the Scouting Movement as he was himself a boy scout from 1951 to 1962, earned the rank of Eagle Scout, was elected to the BSA's honor society, the Order of the Arrow, and to the position of Chief

of the Lodge of the Order, and received the Order's highest honor, the Vigil. From 1957 to 1961, Mr. Gibson served as waterfront staff of the boy scout summer camp and as Waterfront Director.

In 1996, when his son joined Boy Scout Troop 128 in McLean, Virginia, Mr. Gibson volunteered as an Assistant Scoutmaster and registered as an adult member of the scouting movement. The leadership of Troop 869, including Reverend James C. Sprouse ("Rev.Sprouse"), the pastor of the Church, and John C. Kim, PhD, ("Dr. Kim"), the Chartered Organization Representative to Troop 869, accepted Mr. Gibson's offer to serve as Scoutmaster. Mr. Gibson devoted a substantial amount of time and energy to invigorating Troop 869, focusing primarily on aquatic activities such as rafting and canoeing.

In July 2001, while at the National Boy Scout Jamboree with the Troop, Mr. Gibson "flip-kicked" a youth, swinging his lower leg from the knee to the side to contact the youngster on the buttocks with the top of his moccasin. While Mr. Gibson describes this as a "thoughtless act of horseplay," Defendants characterize it as "kick[ing] this scout in an attempt to control the scout's action." Compare Defs.' Response Pl.'s Undisp. Facts ¶ 10 *with* Mem. P. & A. Supp. Pl.'s Mot. Partial Summ. J. ¶ 10. In response to this action, on July 25, 2001, NCAC expelled Mr. Gibson from membership in the scouting movement. Mr. Gibson appealed the expulsion to BSA's Northeast Region and was reinstated as a member of the BSA on December 11, 2001. The Northeast Region Review Committee and the National Office of the BSA approved Mr. Gibson's reinstatement.

On May 17, 2002, five months after his reinstatement as a Boy Scout member, Peter Petesch, a member of the Executive Board, Council Attorney and Chairman of the Council's standards of Membership Committee of the NCAC wrote to the Northeast Region raising concerns that "established policy was not adhered to in the case of Mr. Joseph Gibson." Defs.' Responses to Pl.'s Undisp. Facts Ex. 4F. Mr. Petesch writes that the decision to suspend Mr. Gibson's membership was made by the Scout Executive of the NCAC, Ron Carroll, "only after careful investigation," and that the regional committee's decision "might have been made prematurely" since it did not consult with the local council level making the original decision prior to rendering a ruling. *Id.* Next, Mr. Petesch requests that the Northeast Region reconsider its decision. *Id.* In a May 22, 2002 letter, Mr. Petesch again requests that the Northeast Region "revisit" its decision to reinstate Mr. Gibson, stating that "we feel strongly that the Regional committee did not have full benefit of all the information and facts related to this case at the time they made their decision." Defs.' Responses to Pl.'s Undisp. Facts Ex. 4G. At no time did Defendants notify Mr. Gibson that his membership was under review. *Id.* ¶ 14.

In the summer and fall of 2002, Mr. Brian Fasci ("Mr.Fasci"), the paid Scouting professional for the local Scout District with the title of District Executive, began receiving communications from concerned parents regarding Mr. Gibson's conduct as Scoutmaster. Aff. Brian Fasci ¶¶ 6–32. As a result, Mr. Fasci set up meetings with parents to investigate their concerns, and in November 2002, met with Dr. Kim, Mr. Gibson, Mr. Bob Reif, the Troop Committee chair, and Mr. Matthew Budz, Field Director for the NCAC Virginia Central Service Area, to report on these concerns. In an email dated November 12, 2002, responding to Mr. Reif's contention that Mr. Fasci was trying to "oust" Mr. Gibson as Scoutmaster and himself as Troop Com-

mittee Chair, Mr. Fasci responded, "first off let me assure you that I nor no other persons from the Boy Scouts of America are trying [*sic* ] oust Joe Gibson as Scoutmaster nor you as committee chairman." Pl.'s Ex. 6. In January 2003, Mr. Fasci continued to receive complaints from parents and ultimately contacted Don Reinhardt, advisor to the Standards of Membership Committee; his affidavit states that Mr. Fasci "was unaware of what actions Mr. Reinhardt took" following their communication. Aff. Brian Fasci ¶ 33.

On January 27, 2003, Mr. Fasci met with Rev. Sprouse, Dr. Kim and two other members of the church community. According to Dr. Kim's affidavit, Mr. Fasci informed the group that NCAC would not renew the annual charter of Troop 869 if Mr. Gibson were to remain the Scoutmaster. Aff. John C. Kim ¶ 5. Mr. Fasci, on the other hand, avers that when asked whether BSA would sponsor Mr. Gibson as a Scoutmaster, he responded that the Charter Organization must decide who is Scoutmaster. Aff. Brian Fasci ¶ 34. Furthermore, he avers that he was asked whether he would personally recommend Mr. Gibson as a Scoutmaster, and that his reply was "no." *Id.* No evidence in the record before the Court shows that Mr. Gibson was made aware that his membership in the Boy Scouts was under consideration at any point following his reinstatement in December 2001.

On February 7, 2003, Mr. Gibson received a letter dated February 3, 2003 from NCAC stating that his membership registration in the scouting movement had been revoked. No basis for the membership revocation is provided in the letter, although the letter states that Mr. Gibson can appeal the decision by sending a letter to the Regional Director within sixty days "explaining your version of the facts." Pl.'s Ex. 5J.

Mr. Gibson appealed the revocation of his membership to the Northeast Region and then to the BSA national headquarters in Texas. On February 7, 2003, Mr. Gibson sent the Northeast Region a letter requesting information about the charges upon which his expulsion was based. He received a response to this letter on March 10, 2003, over a month after his request for information. In the meantime, on March 8, 2003, he had filed a report in support of his appeal. The March 10, 2003 letter from the Assistant Regional Director states:

> My understanding of the matter is as follows: 1. You have disregarded the unit committee governance policies of BSA. 2. Your actions have been disruptive to the proper operation of the troop. 3. Your actions have improperly caused parents and youth to leave the troop. 4. You permitted improper youth conduct to occur at troop activities.

Def.'s Ex. 4B. There is no evidence in the record before the Court that Mr. Gibson was provided any opportunity to appear in person or by representative during his appeal before the Northeast Region or to question the witnesses to his conduct, that he knew the date or place of any relevant hearing, or that he was ever informed of the identity of the person or persons who reviewed his appeal.

On April 7, 2003, Ron Carroll, NCAC Scout Executive sent a letter to the Regional Leadership Standards Committee indicating that he did not support reinstatement of Mr. Gibson's membership because "Joe Gibson is NOT fit and does not meet the high standards of leadership of the BSA." Pl.'s Ex. 5N (emphasis in original). On April 15, 2003, Mr. Petesch wrote to Mr. Ronald Rogers, Assistant Regional Director of the Northeast Region stating that the NCAC's Standards of Membership Committee unanimously endorsed the

decision to revoke Mr. Gibson's registration with the Boy Scouts. Pl.'s Ex. 5O. On April 29, 2003, the BSA Northeast Region sent Mr. Gibson a letter stating that it had denied his appeal. Pl.'s Ex. 5Q. No reasoning for the revocation of Mr. Gibson's membership was provided to him.

On May 8, 2003, Mr. Gibson appealed the revocation of membership to the BSA national headquarters in Texas. The record before the Court contains no evidence that Mr. Gibson was notified of the date or place of the hearing, given an opportunity to appear in person or by representative, provided with information about the persons who had complained about him or a chance to question witnesses against him, or provided with any documentation against him upon which the revocation of membership was based. On December 17, 2003, the national headquarters of the BSA denied Mr. Gibson's appeal.

Mr. Gibson filed his initial complaint against the BSA and the NCAC in February 2004 in United States District Court for the District of Columbia. The action was subsequently transferred to this Court. Mr. Gibson's Second Amended Complaint, Revised alleges violation of the right of fair procedure, *ultra vires* action and defamation. Mr. Gibson seeks summary judgment on the fair procedure and *ultra vires* claims.

## II. DISCUSSION

### A. Standard of Review

Under Rule 56(c), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

*See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Analysis

*Right of Fair Procedure*

■ The Court grants Mr. Gibson's motion for partial summary judgment on the fair procedure claim because no genuine dispute of material fact exists for trial that Mr. Gibson was denied his common law rights of fair procedure, and he is entitled to judgment as a matter of law. In *Gottlieb v. Economy Stores, Inc.,* 199 Va. 848, 102 S.E.2d 345 (1958), the Supreme Court of Virginia held that, in reviewing the expulsion of a member of a corporation, a court

[M]ay inquire whether the member was given reasonable notice of the hearing of the charge against him, whether he was afforded an opportunity to be heard, and whether the hearing and expulsion were in good faith. In cases where the evidence is conflicting, the action of the corporation is conclusive, if it is in accor-

dance with the law and the powers conferred upon the corporation. When there is evidence tending to support the conclusion, the courts will not interfere with the merits of the decision.

*Id.* at 857–58, 102 S.E.2d 345; see also *Emory College of Puerto Rico v. Accrediting Council for Continuing Educ. & Training, Inc.,* No. 97–1416–A, 1997 U.S. Dist. LEXIS 23487 at *5 (E.D.Va. Oct. 22, 1997) (stating that Virginia law is "consistent with" the rule that, "[f]ederal review of the actions of a voluntary association with respect to its members is limited to consideration of whether the decisions are 'arbitrary and unreasonable' and whether they are supported by 'substantial evidence'") (citations omitted). Although Virginia law specifies that a court's review of a corporation's actions with respect to its membership is limited, it contemplates that such a review may sometimes be warranted. *Id.*

Unlike the plaintiff in *Emory* and similar to the plaintiff in *Gottlieb* before the association changed its mind and gave him a hearing, notification of the charges against him and a chance to respond, Defendants never informed Mr. Gibson that his membership in the Boy Scouts was even under review after his reinstatement on December 11, 2001. It is not a matter in dispute that Mr. Gibson's first inkling that his membership *had been* under review was on the day he received a letter summarily revoking his registration as an adult member of the scouting movement in February 2003. Not only did Mr. Gibson not have notice of the possible revocation of his membership, but also Mr. Fasci explicitly and affirmatively told Mr. Reif that he was not trying to "oust" Mr. Gibson as Scoutleader in November 2002. Little did Mr. Gibson know that in May 2002, Mr. Petesch, Chairman of the Council's Standards of Membership Committee, wrote to the Northeast Region twice asking them to revisit their decision to reinstate him as a member of the Boy Scouts.

Although Mr. Gibson was given the opportunity to provide his "version of the facts" in support of maintaining his membership in writing, Mr. Gibson received this offer only *after* his membership had been revoked. Furthermore, Mr. Gibson was not told which facts he should respond to. Without notice of the charges or witnesses against him, the witness's complaints, an opportunity to question his accusers, or the alleged basis for revocation of membership, Mr. Gibson had to imagine what the basis was for the revocation and craft a response. After submitting his report in favor of reinstatement on March 8, 2003, Mr. Gibson received a letter on March 10, 2003 stating that it was Mr. Rogers' "understanding" that the bases for the revocation included "disregard" for unit committee governance policies of BSA, "disruption" to the proper operation of the troop, improperly causing parents and youth to leave the troop, and "improper youth conduct." Not only were specific incidents not delineated, but the phrasing of the letter-as Mr. Rogers' "understanding" of the facts at issue-simply did not provide Mr. Gibson with sufficient notice to pursue his appeal adequately. Finally, Mr. Gibson was not provided with any information as to when any hearings would be held at any point. Because Mr. Gibson was given no adequate notice of the charges against him, no notice that his membership in the Boy Scouts was under review, no notice of the time or locations of hearings relevant to his membership, nor the opportunity to respond to any charges, the Court holds that Defendants NCAC and BSA violated Mr. Gibson's right of fair procedure and grants summary judgment on this count to Mr. Gibson.

*Ultra Vires* Action

The Court denies Plaintiff's motion for summary judgment on the *ultra vires*

count because no genuine dispute of material fact exists that Defendants' revocation of Plaintiff's membership in the scouting movement conformed with their bylaws, and Plaintiff is not entitled to judgment as a matter of law. Under Virginia law, corporations or associations may not act contrary to or beyond the scope of their own rules, policies or procedures. *See e.g., Unit Owners Assoc. v. Gillman*, 223 Va. 752, 292 S.E.2d 378 (1982) (holding that condominium owners' association lacked authority to impose fines on member-unit owners). In *Gottlieb*, the Virginia Supreme Court cited the Second Circuit Court of Appeals' decision in *Stevenson v. Holstein–Friesian Assoc. of America*, 30 F.2d 625 (2d Cir.1929) to specify into what matters a court may inquire when a person's membership in an association is revoked, including whether the association's decision-making body acts according to its own rules:

> Where an association sets up a private tribunal to determine whether a member has forfeited his rights of membership by the violation of some rule of the corporation, judicial review is of limited scope. In general, it may be said that courts will interfere to keep such a tribunal within its jurisdiction, as prescribed by the rules of the association, and will inquire whether the action taken was in bad faith, or in violation of the laws of the land, but will not investigate the merits of the tribunal's decision.

*Gottlieb*, 102 S.E.2d at 353 (citing *Stevenson*, 30 F.2d at 627).

■ Defendants' own rules explicitly provide them with the authority to revoke the membership of any of their members. As described in their "Procedures for Maintaining Standards of Membership," the BSA bylaws permit the BSA to develop and enforce its membership standards. Def.'s Ex. 1 at 6 ("Individuals deemed unsuitable for BSA membership will be removed from membership if already registered or denied registration if not registered"). As Plaintiff points out, however, Chartering Organizations, such as the Church in this action, organize the troop, and in conjunction with other adults composing the Troop Committee, select adults to serve in leadership positions, such as the Scoutmaster. According to the "Troop Committee Guidebook," a troop is "owned" by a Chartered Organization. Pl.'s Ex. 8 at 7. The "Handbook for Scout Leaders" states that the Troop Committee's responsibilities include "select[ing] quality leaders for the troop," and identifies this as "the most important responsibility of a troop committee." Pl.'s Ex. 9 at 161. As is conceded by the Plaintiff, however, whenever a Scoutmaster's membership is revoked, the Scoutmaster will become ineligible to serve as Scoutmaster. Furthermore, just because the Troop Committee and Chartered Organization are charged with selecting a Scoutmaster, nowhere in the documents provided to the Court does it say that Defendants *may not* consider how an adult manages the affairs of a boy scout troop in deciding whether to revoke his or her membership or whether he or she meets the membership qualifications Defendants have established. Consequently, because the Court finds that Defendants did not act beyond the scope of their authority as delineated by their own rules in revoking Mr. Gibson's membership, the Court denies Plaintiff's motion for summary judgment as to the *ultra vires* count.

## III. CONCLUSION

The Court grants Plaintiff's motion for partial summary judgment as to the fair procedure claim because Defendants failed to provide Plaintiff with notice that his membership was under review or of the charges against him, and they provided him with no meaningful opportunity to re-

spond to those charges. The Court denies Plaintiff's motion for partial summary judgment as to the *ultra vires* claim because the Court finds that even if no genuine dispute of material fact exists, Plaintiff is not entitled to judgment as a matter of law since Defendants did not act beyond the scope of their own authority as delineated by their own bylaws.

For the foregoing reasons, it is hereby

ORDERED that Plaintiff Joseph Lee Gibson's Motion for Partial Summary Judgment is GRANTED as to the fair procedure count and DENIED as to the *ultra vires* count. It is further

ORDERED that the parties are directed to brief the issue of what form, if any, of injunctive relief is appropriate to vindicate Mr. Gibson's rights. Plaintiff is instructed to file a brief on this issue by Wednesday, January 19, 2005. Defendants' response is due on Wednesday, January 26, 2005. Plaintiff may file a reply to the Defendants' response by Monday, January 31, 2005. The Court will hear oral argument on this matter on Friday, February 4, 2005 at 10:00 am.

The Clerk is directed to forward a copy of this Order to counsel of record.